UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                           :

TIFFANY (NJ) LLC and TIFFANY AND COMPANY,   :

               :

             Plaintiffs,     :

               :

         v.          :   2010 Civ. 9471 (WHP)

               :

QI ANDREW, GU GONG, SLIVER DENG, and   :

KENT DENG, all d/b/a TIFFANYSTORES.ORG,   :   **DECLARATION OF**

FASHION STYLE and STORESORG; ABC     :   **LANIER SAPERSTEIN**

COMPANIES; and JOHN DOES,       :

               :

             Defendants.    :

               :
------------------------------------------------------------------- x

           LANIER SAPERSTEIN, declares under penalty of perjury, pursuant to 28 U.S.C.

§ 1746 as follows:

           1.      I am an attorney admitted to practice before this Court and am associated

with Allen & Overy LLP.  I submit this declaration in opposition to plaintiffs' motion to compel

non-parties Bank of China ("BOC") and Industrial and Commercial Bank of China, Ltd.

("ICBC") (together, the "Banks") to produce documents, if any, located in China through

subpoenas that plaintiffs served on the New York branches of the Banks ("BOCNY" and

"ICBCNY," respectively).

<u>Tiffany & Co. Conducts Significant Amount Of Business In China</u>

           2.      Tiffany and Company, one of the plaintiffs in the underlying litigation,

does business as Tiffany & Co.  <u>See</u> plaintiffs' Complaint (the "Comp."), at ¶ 7.  Based on press

reports and financial releases, Tiffany & Co. has a significant and growing presence in China.

The Chairman of Tiffany & Co., Michael J. Kowalski, is reported as saying that "China will

rapidly become the place where we will have the greatest number of new stores.  Within the next

three years, the number will stand between 25 and 30." Attached as Exhibit A is true and correct copy of an article from China Daily, entitled "China set to become jewel in Tiffany crown," dated November 2010, that I downloaded from http://www.chinadaily.com.cn/bizchina/2010-11/02/content_11489750.htm (last visited May 17, 2011).

3.     In 2010, Tiffany & Co. opened four new stores in China. Attached as Exhibit B is a true and correct copy of Tiffany & Co's March 21, 2011 press release, entitled "Tiffany Reports Fourth Quarter and Year Results; Company Looks for Solid Growth in 2011."

4.     In the Asia-Pacific region (which includes China), Tiffany & Co.'s sales increased 25% to $188.3 million in the fourth quarter of 2010 and 29% in the full year to $549.2 million, which accounted for 18% of Tiffany & Co.'s worldwide sales. (Id.)

The Banks Respond to Plaintiffs' Discovery Requests Promptly and In Good Faith

5.     On January 5, 2011, plaintiffs served BOCNY and ICBCNY with a copy of the preliminary injunction issued in the underlying litigation (the "preliminary injunction").

6.     On or about January 7, 2011, plaintiffs served BOCNY and ICBCNY with document subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "subpoenas"). Attached as Exhibit C are a true and correct copies of the subpoenas served on the New York branches.

7.     Attached as Exhibit D is a true and correct copy of the letter dated January 7, 2011, that I sent to plaintiffs' counsel, Anne Coyle.

8.     Attached as Exhibit E is a true and correct copy of the letter dated January 21, 2011, that I sent to plaintiffs' counsel, Jennifer Colgan Halter.

9.    Attached as <u>Exhibit F</u> is a true and correct copy of Non-Party Bank of China, New York Branch's Objections and Responses to Plaintiffs' Rule 45 Subpoena, dated January 24, 2011.

10.    Attached as <u>Exhibit G</u> is a true and correct copy of the letter dated February 24, 2011 that I sent to Ms. Halter.

11.    Attached as <u>Exhibit H</u> is a true and correct copy of the letter dated January 7, 2011 that ICBCNY sent to Ms. Coyle.

12.    Attached as <u>Exhibit I</u> is a true and correct copy of Non-Party Industrial and Commercial Bank of China, New York Branch's Objections and Responses to Plaintiffs' Rule 45 Subpoena, dated January 24, 2011.

13.    Attached as <u>Exhibit J</u> is a true and correct copy of an e-mail exchange between me and Ms. Halter at the end of February 2011.

<u>The U.S. State Department Revises Its Webpage</u>

14.    On or about May 13, 2011, the U.S. State Department updated its webpage on "China Judicial Assistance."  The U.S. State Department's updated webpage no longer had the following commentary on it:

> COMPULSION OF TESTIMONY OR DOCUMENTARY EVIDENCE: While it is possible to request compulsion of evidence in China pursuant to a letter rogatory or letter of request (Hague Evidence Convention), such requests have not been particularly successful in the past. Requests may take more than a year to execute.  It is not unusual for no reply to be received or after a considerable time has elapsed, for Chinese authorities to request clarification from the American court with no indication that the request will eventually be executed.  It may be useful to consult local counsel in China for further guidance.  But see discussion below regarding the role of lawyers in the Chinese judicial system.  See note above regarding preparation of letters rogatory for use in China.  Upon its accession to the Hague Evidence Convention, China declared that "in accordance with Article 23 of the Convention concerning the Letters of Request issued for the purpose of obtaining pre-trial discovery of

documents as known in common law countries, only the request for obtaining discovery of the documents clearly enumerated in the Letters of Request and of direct and close connection with the subject matter of the litigation will be executed."  The United States is seeking clarification from the Government of the People's Republic of China regarding its implementation of the Hague Evidence Convention.

15.    The updated webpage now states, in pertinent part, as follows:

TAKING OF EVIDENCE: China is a party to the Hague Evidence Convention. Under its declarations to that Convention and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Convention.  Consular depositions would require permission from the Central Authority on a case by case basis and the Department of State will not authorize the involvement of consular personnel in a deposition without that permission. China does not permit American attorneys in China to take depositions for use in foreign courts.  Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants.

16.    Attached as <u>Exhibit K</u> is a true and correct copy of the U.S. State Department's webpage on "China Judicial Assistance," that I download from the U.S. State Department's website yesterday.  Also attached as <u>Exhibit K</u> is a blackline that I had prepared, comparing the U.S. State Department's prior and current webpages on "China Judicial Assistance" to reflect the various updates.

<u>The Joint Letter and the April 19, 2011 Conference</u>

17.    Attached as <u>Exhibit L</u> is a true and correct copy of the joint letter that the parties submitted to the Honorable William H. Pauley III regarding the current dispute.

18.    Attached as <u>Exhibit M</u> is a true and correct copy of the transcript of the proceedings before Magistrate Judge Henry Pitman on April 19, 2011.

## The Samsun Decision

19.    On May 12, 2011, the Honorable Jane S. Solomon of the Supreme Court of New York, County of New York, issued an opinion in the matter captioned <u>Samsun Logix Corp. v. Bank of China, et al.</u>, Index No. 105262/10 (the "<u>Samsun</u> Opinion"), dismissing a petition for post-judgment attachment and a turn over order in favor of respondents, including the Banks.  Attached as <u>Exhibit N</u> is a true and correct copy of the <u>Samsun</u> Opinion.

## The MyReplicaHandbag Litigation

20.    In its motion, plaintiffs rely on an earlier action, <u>Gucci America, Inc., et al. v. MyReplicaHandbag.com et al.</u>, No. 07 Civ. 2438.  We did not represent BOC in that earlier matter.  However, I have reviewed the docket for the <u>MyReplicaHandbag</u> case and the publicly filed documents relating to BOC's involvement in that matter.  I have also spoken with counsel who handled the matter on behalf of BOC.

21.    In <u>MyReplicaHandbag</u>, plaintiffs applied for and the court granted a Temporary Restraining Order and Order to Show Cause ("TRO") on March 27, 2007.  Among other things, the TRO (1) enjoined defendants from transferring any assets, including any transfers into or out of "any and all Bank of China accounts that are associated with or utilized by any of Defendants, including but not limited to Account No. . . . ."; and (2) granted expedited discovery as to all defendants.

22.    After entry of the TRO, two defendants appeared, including defendant Kelvin Cho, and requested an extension of time in which to respond to plaintiffs' application for a preliminary injunction.  By Stipulation and Order, dated April 17, 2007, signed by counsel for defendants and so ordered on April 19, 2007 ("4/17/07 Stipulation"), the TRO was extended.  Attached as <u>Exhibit O</u> is a true and correct copy of the 4/17/07 Stipulation.

23.    The 4/17/07 Stipulation recited that "Counsel for Defendants TradeinAsia and Kelvin Cho has also represented that Defendants TradeinAsia and Kelvin Cho have agreed that: . . . (c) the Bank of China account identified in the March 26 Order [the TRO] shall be treated in accordance with the terms and the spirit of the March 26 Order [TRO], including but not limited to the asset restraint and the disclosure requirements; . . ."  (Emphasis added.)

24.    Based on the agreement of defendants set forth in the 4/17/07 Stipulation, I understand that BOC initially froze defendants' account at its Guangdong branch in China. Defendant Cho, however, appears to have retained counsel in China and threatened to sue the Bank for preventing access to his account.

25.    By order dated June 22, 2007 (the "6/22/07 Order"), the U.S. court ordered defendant Cho "to provide a signed consent to the Bank of China in China to provide access to all requested documents related to all of his accounts at the Bank of China."  Attached as Exhibit P is a true and correct copy of the 6/22/07 Order.  Apparently defendant Cho did not respond to the 6/22/07 Order.

26.    Plaintiffs ultimately moved for an order holding the BOC in contempt for failing to produce documents in response to the TRO and for releasing the customer's funds in the face of a potential action in China.  The matter was resolved by settlement agreement.  The court did not rule on the motion and did not make any finding on any issue raised by the papers submitted on the motion.  Attached as Exhibit Q is a true and correct copy of the Stipulation and Order of Settlement between Plaintiffs and Third-Party Bank of China, dated December 17, 2008.  Under the agreement, BOC paid plaintiffs and its counsel over $190,000.

21.    Subsequently, plaintiffs took the position that BOC had not fulfilled the terms of the agreement and again moved to hold BOC in contempt.  Plaintiffs here submits a

letter from BOC's then counsel, Mark R. Seiden of Jones Day, that relates to this second motion. The letter recites that the parties were attempting to resolve plaintiffs' second motion by agreement, and advises that in an effort to resolve the matter, BOC would provide certain documents "in accordance with, and subject to, the terms and conditions of the December 2008 Settlement Agreement, including the [confidential] November Side Letter." <u>See</u> Declaration of Robert L. Weigel, dated May 3, 2011, Ex. 21.

23.     Mr. Seiden has advised me that documents referred to in the letter were made available for inspection but that no copies of the documents were turned over to plaintiffs or their counsel.

24.     As suggested by Mr. Seiden's letter, the second motion also was resolved by agreement.  Again, the court did not decide plaintiffs second motion and did not rule on any issue raised by the motion papers.  Attached as <u>Exhibit R</u> is a true and correct copy of the Stipulation and Order of Settlement between Plaintiffs and Third-Party Bank of China, dated January 5, 2010.   Under that agreement, BOC paid plaintiffs and its counsel a further $300,000 for "true finality" of the matter.

<u>The Ministry of Justices Letter</u>

25.     Attached as <u>Exhibit S</u> is a true and correct copy of a letter dated May 12, 2011 that I received from BOC, which it received from the International Legal Cooperation Center of the Chinese Ministry of Justice ("ILCC").  The ILCC is responsible for handling international requests for judicial assistance, and its letter provides information regarding the execution of requests for information located in China.  Immediately behind the Chinese version of the letter is an English translation of it.

Dated:  New York, New York
        May 17, 2011

Respectfully submitted,


By:   /s/ Lanier Saperstein
       Lanier Saperstein

ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York  10020
Telephone:  212-610-6300
lanier.saperstein@allenovery.com