UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| TIFFANY (NJ) LLC and TIFFANY AND COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | 10-cv-9471 |
| v. | ) ) | |
| QI ANDREW, GU GONG, SLIVER DENG, and KENT DENG, all d/b/a TIFFANYSTORES.ORG, FASHION STYLE and STORESORG; ABC COMPANIES; and JOHN DOES, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW OF NONPARTY CHINA MERCHANTS BANK
IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE
JUDGE PITMAN'S JULY 25, 2011 OPINION AND ORDER**

Dwight A. Healy
Marika Maris (of counsel)
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
Tel:  (212) 819-8200

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT .................................................................................................1

Statement of Facts.................................................................................................................3

   1.   CMB Is Not a Defendant ...................................................................................3
   2.   CMB Acted in Good Faith in Responding to the Subpoena.................................4
   3.   CMB Was Not Central to the Defendants' Counterfeiting Operation.................4
   4.   The Fact that CMB Has a Branch in New York is Irrelevant to this Dispute.....5
   5.   Chinese Law Prohibits Disclosure of the Information Plaintiffs' Seek ..............5

ARGUMENT .........................................................................................................................6

   I.      Standard of Review ...........................................................................................6

   II.     Magistrate-Judge Pitman Correctly Evaluated the Restatement Factors .....................7

       A.   Magistrate-Judge Pitman Was Correct in Finding that the Requested Information
             Originated in China ...................................................................................8

       B.   Magistrate-Judge Pitman's Finding that the Hague Convention Provides an
             Alternative Means for Obtaining the Information Sought was Correct ...................10

          i.    Magistrate-Judge Pitman Considered, and Correctly Rejected, Plaintiffs'
                Arguments.................................................................................11
          ii.   Magistrate-Judge Pitman Did Not "Ignore" Tiffany's Purported "Evidence"
                that a Hague Convention Request Would be Futile.........................14
          iii.  China Gives Effect to Hague Convention Requests For Evidence.................16
          iv.  Tiffany Mischaracterizes China's Record on the Hague Convention ...........16

       C.   Magistrate-Judge Pitman's Finding that China's Interest Outweighs the U.S. Interest
             in this Dispute Was Well Reasoned and Correct......................................................17

          i.    The U.S. Does Not Have an Interest in Forcing an Innocent Nonparty to
                Violate the Laws of its Home Jurisdiction......................................17
          ii.   Lanham Act Section 1116(d)(1)(A) Does Not Evidence Any U.S. Interest in
                 this Action.................................................................................18
          iii.  The Chinese Interest in this Matter is Clear and Strong ..................19

       D.   CMB Faces a Serious Risk of Hardship .................................................................21

       E.   CMB Has Not Acted in Bad Faith.........................................................................23

   III.    Magistrate-Judge Pitman Was Entitled to Order Resort to the Hague Convention,
             Regardless of Whether or Not the Court Has Jurisdiction over CMB .......................24

CONCLUSION....................................................................................................................25

## **TABLE OF AUTHORITIES**

### **CASES**

AMBAC Financial Services, LLC v. Bay Area Toll Authority, No. 09 Civ. 7062(RJH), 2010 WL 4892678 (S.D.N.Y. Nov. 30, 2010) ..................................................................................6

Anderson v. City of Bessemer, 470 U.S. 564 (1985) ......................................................7

Brennan v. County of Broome, 2011 WL 2174503 (N.D.N.Y. 2011)................................6

Carter v. Artuz, No. 95 CIV. 2361 CSH KNF, 1999 WL 46685 (S.D.N.Y. Feb. 1, 1999) ...............7

Dietrich v. Bauer, No. 95 Civ. 7051 (RWS), 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) ...........8

First National City Bank of N.Y. v. IRS, 271 F.2d 616 (2d Cir. 1959)............................................24

Gap, Inc. v. Stone Int'l Trading, Inc., No. 93 Civ. 0638 (SWK), 1994 WL 38651 (S.D.N.Y. Feb. 4, 1994) ..................................................................................................................................25

Graves v. Deutsche Bank Securities Inc., No. 07 Civ. 5471 (BSJ), 2010 WL 997178 (S.D.N.Y. March 18, 2010)..........................................................................................................................7

Gucci Am., Inc, et al. v. MyReplicaHandbag.com et al., No. 07 Civ. 2438 (JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ("MyReplicaHandbag")........................................................23

Gucci Am., Inc. v. Curveal Fashion, No. 09 Civ. 8458 (RJS) (THK), 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ..................................................................................8, 18, 20

Gucci America, Inc., et al. v. Li, et al., 10 Civ. 4974 (S.D.N.Y. Aug. 23, 2011)..............................7

Highland Capital Management, L.P. v. Schneider, 551 F. Supp. 2d 173 (S.D.N.Y. 2008)...............6

Hudson v. Hermann Pfauter GmbH & Co., 117 F.R.D. 33 (N.D.N.Y. 1987)............................10, 12

In re Equitable Plan Co., 185 F. Supp 57 (S.D.N.Y. 1960) .............................................................21

In re Grand Jury Proceedings Bank of Nova Scotia, 740 F.2d 817 (11th Cir. 1984) ......................24

Ings v. Ferguson, 282 F.2d 149 (2d Cir. 1960)..........................................................................20, 21

Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 105 F.R.D. 435 (S.D.N.Y. 1984)....................25

Intercont'l Credit Corp. v. Roth, 595 N.Y.S.2d. 602 (N.Y. Sup. Ct. 1991) ..............................10, 21

Knight v. Ford Motor Co., 615 A.2d 297 (N.J. Super. Ct. 1992) ....................................................10

Linde v. Arab Bank, PLC, 262 F.R.D. 136 (E.D.N.Y. 2009)....................................................9, 21

Milliken & Co. v. Bank of China, 758 F. Supp. 2d 238 (S.D.N.Y. 2010)........................8, 12, 14, 18

Minpeco, S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517 (S.D.N.Y. 1987)....................20, 21

Orlich v. Helm Bros., 160 A.D.2d 135, 560 N.Y.S.2d 10 (1st Dep't 1990)....................................10

Pierce v. Underwood, 487 U.S. 552 (1988) .................................................................................7

Rexnord Holdings, Inc. v. Bidermann, No. 91 Civ. 5271 (RPP), 1994 WL 714394 (S.D.N.Y.
      Dec. 21, 1994)....................................................................................................................20

Roth v. United States, No. 09 CV 8712 (GBD)(LMS), 2011 WL 2947004 (S.D.N.Y. July 19,
      2011) ..................................................................................................................................6

Samsun Logix Corp. v. Bank of China, et al., Index. No. 105262/10 (N.Y. Sup. Ct. May 12,
      2011). .................................................................................................................................22

Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S.
      522 (1987)..........................................................................................................................13

Ssangyong Corp. v. Vida Shoes Int'l, Inc., No. 03 Civ. 5014 (KMW) (DFE), 2004 WL 1125659
      (S.D.N.Y. May 20, 2004)....................................................................................................8

Trade Dev. Bank v. Cont'l Ins. Co., 469 F.2d 35 (2d Cir. 1972) ....................................................21

U.S. v. First Nat'l Bank of Chi., 699 F.2d 341 (7th Cir. 1983) .......................................................21

U.S. v. First Nat'l City Bank, 396 F.2d 897 (2d Cir. 1968)............................................................20

Valentin v. Bank of New York Mellon Corp., No. 09 CV 09448(GBD), 2011 WL 2437644
      (S.D.N.Y. May 31, 2011)................................................................................................7, 12

## STATUTES AND RULES

15 U.S.C. § 1116.......................................................................................................................2, 18

Fed. R. Civ. P. 72(a) ....................................................................................................................1

## MISCELLANEOUS

12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3069, at 350–51 (2d ed. 1997)...7

*Report on the Operation of the Hague Service Convention and the Hague Evidence Convention*,
      28 I.L.M. 1556 (April 1989) ...............................................................................................10

Restatement (Third) of Foreign Relations Law § 442 ...............................................................1, 7

## PRELIMINARY STATEMENT

Tiffany's objections to Magistrate-Judge Pitman's decision not to compel CMB and two other Chinese banks to violate Chinese law by producing account records which originated and are located in China, and relate to accounts in China, is a classic example of a party seeking de novo review of a magistrate judge's decision and flies in the face of the circumscribed standard of review set forth in Federal Rule of Civil Procedure 72(a) and repeatedly applied by the cases -- that the decision cannot be overturned unless it is contrary to law or clearly erroneous.[1]  There is no issue as to whether Magistrate-Judge Pitman applied the correct legal standard; Tiffany and the Banks agree that the multi-factor test set forth in Restatement (Third) of Foreign Relations Law § 442, cited and analyzed at length by Magistrate-Judge Pitman, is the applicable rule.  It is equally clear from the 51 page, carefully reasoned Order that Magistrate-Judge Pitman engaged in "an appropriate fact-specific inquiry" (Pl. Obj. at 5 n. 4) as to each of the Restatement factors. The fact that Plaintiffs disagree with the Magistrate-Judge's conclusions does not make the decision clearly erroneous or an abuse of discretion and is not a basis for overturning the Order.

In an effort to justify their attack on the Order, Plaintiffs mischaracterize the Magistrate-

---

[1]     The following abbreviations are used herein:  Tiffany (NJ) LLC, and the other plaintiffs ("Plaintiffs" or "Tiffany"); defendants in this action ("Defendants"); nonparty China Merchants Bank ("CMB"); the New York branch of CMB ("CMBNY"); nonparty Bank of China ("BOC"); nonparty Industrial and Commercial Bank of China ("ICBC," and together with CMB and BOC, the "Banks"); July 25, 2011 order of Magistrate-Judge Pitman, Dkt. No. 38 ("Order"); Plaintiffs' Objections to the July 25, 2011 Opinion and Order of Magistrate Judge Henry Pitman Denying Plaintiffs' Motion to Compel the Production of Documents from Third-Parties Banks of China, China Merchants Bank, and Industrial and Commercial Bank of China, dated August 8, 2011, Dkt. No. 40 ("Pl. Obj."); Declaration of Jennifer C. Halter, dated August 8, 2011, Dkt. No. 41 ("Halter Dec."); Memorandum of Law in Support of Plaintiffs' Motion to Compel The Production of Documents From Third-Parties Bank of China, China Merchants Bank, and Industrial and Commercial Bank of China, dated May 3, 2011, Dkt. No. 21 ("Pl. Mem."); Memorandum of Law of Third Party China Merchants Bank in Opposition to the Plaintiffs' Motion to Compel the Production of Documents, dated May 17, 2011, Dkt. No. 23 ("CMB Mem."); Declaration of Dwight A. Healy, dated May 17, 2011, Dkt. No. 24 ("Healy Dec."); Declaration of Zhipan Wu, dated May 17, 2011, Dkt. No. 25 ("Wu Dec."); Declaration of Richard N. Pagnotta, Sr., dated May 17, 2011, Dkt. No. 26 ("Pagnotta Dec."); Declaration of Lanier Saperstein, dated May 17, 2011, Dkt. No. 27 ("Saperstein Dec."); Declaration of Robert L. Weigel, dated May 3, 2011, Dkt. No. 22 ("Weigel Dec."); Declaration of Donald Clarke, dated January 3, 2011 ("Clarke Dec. II") (Weigel Dec. Ex. 22); Declaration of William P. Alford, dated May 24, 2011, Dkt. No. 34 ("Alford Dec."); Preliminary Injunction and Order Authorizing Expedited Discovery, dated January 25, 2011, Dkt. No. 7 ("PI"); Subpoena, dated January 26, 2011 ("Subpoena"); Complaint, dated December 20, 2010, Dkt. No. 1 ("Compl."); Transcript of Oral Argument Before the Honorable Henry B. Pitman, dated June 6, 2011, Dkt. No. 36 ("Tr.").

Judge's decision, misstate the record and make numerous factual assertions that find no support whatsoever in the record.  Magistrate-Judge Pitman's conclusion that a majority of the Restatement factors weighed against granting relief that would have required CMB to act in contravention of Chinese law, is not "directly contrary to the undisputed facts" (Obj. at 2) but is in fact fully supported by the record.

- With respect to where the documents sought by Tiffany "originated" (the language of third Restatement factor) what is actually undisputed is that those documents – account records for accounts, if any, that were opened at branches of CMB in China -- originated in China, and personnel at CMBNY do not have copies of those records, and have no access to those records.  The fact that some information (not, as Tiffany claims, all the records sought in its Subpoena) about accounts may be accessed by the customer electronically does not alter the origin or location of the documents.

- Much as Tiffany may not like it, the Hague Convention on the Taking of Evidence Abroad ("Hague Convention") <u>does</u> provide an alternative means of securing the information Tiffany seeks.  The affirmative evidence in the record is that Chinese authorities will entertain and give effect to such requests. There is no evidence – none – that "practitioners and experts on Chinese law have long <u>known</u>" (Obj. at 2, emphasis added) that use of the Hague Convention would be futile.  Neither Tiffany itself nor any "expert" or "commentator" referenced by Tiffany cites a single example (not one) of a Hague Convention request directed to China being rejected.  The basis for the remarks of every expert or commentator cited by Tiffany, the dicta in the one case cited by Tiffany, and the arguments in Tiffany's moving papers before Magistrate-Judge Pitman, is an outdated version of the U.S. State Department website which has since been modified.

- The interests of China in maintaining customer confidentiality are detailed in the expert affidavit of Professor Wu (submitted by CMB), the Vice-Chancellor of Peking University and one of the drafters of the Law of the People's Republic of China on Commercial Banks ("CBL").  There is ample support for Magistrate-Judge Pitman's conclusion that China's interests in this dispute outweigh those of the U.S.  Section 1116(d)(1)(A) of the Lanham Act, cited by Tiffany, does not call for any different conclusion.  That section allows trademark owners to obtain <u>from</u> <u>infringers</u> "records documenting the manufacture, sale, or receipt of things involved in" a counterfeiting operation.  It does not give a trademark owner the right to obtain information about assets of infringers from nonparty banks, and reflects no U.S. interest in compelling production by nonparties, including nonparty banks, of financial information about alleged infringers in violation of applicable foreign law.  Nor is there any "line" of cases that have concluded that foreign bank secrecy laws "pale" by  comparison to Section 1116(d)(1)(A) when the customer can consent to production (Obj. at 2).

- It is undisputed that Chinese laws and regulations by their clear terms prohibit CMB from

turning over confidential customer information without customer consent or authorization from a Chinese Authority, neither of which is present here, and that CMB would be subject to civil and criminal penalties in China for turning over such information. The record demonstrates that CMB would face a real risk of civil and criminal penalties if forced to turn over confidential customer information in this case. The two "examples" Tiffany cites as evidence that CMB would not suffer adverse consequences for turning over the information it seeks do not involve CMB, and are entirely distinguishable. See Obj. at 3. In one the customer originally stipulated that his account information could be produced, and in the other the customer ultimately gave its consent to disclosure.

- The facts, as opposed to Tiffany's scurrilous (and unsubstantiated) claims establish that CMB has acted in good faith, as Magistrate-Judge Pitman properly concluded. After it received a copy of the Court's orders and Tiffany's Subpoena, CMB promptly searched its files in New York for relevant accounts and responsive documents, objected to the production of documents from China and advised Plaintiffs of the reasons for those objections – e.g., that the bank is prohibited by Chinese law from producing confidential customer information absent customer consent or authorization from a Chinese authority. In doing so, CMB acted in conformity with Rule 45, which governs discovery from third parties, and did not "refus[e] to comply" with the Court's orders. Obj. at 3. Tiffany's apparent (and gratuitous) suggestion that the "Banks' intent" is to facilitate trademark infringement or protect trademark infringers (Obj. at 3) is baseless. CMB does not play, and has not admitted that is has, a "central role in [the alleged] counterfeiting" that is the subject of this case. Pl. Obj. at 3 n. 2. CMB is not named as a defendant or even mentioned in the Complaint and is not alleged to have engaged in any wrongdoing, as no doubt would have been the case if Plaintiffs had any basis for these assertions.

The reality is that Magistrate-Judge Pitman's decision is carefully reasoned and fully supported by the record and the law. There is no basis to overturn it.

**STATEMENT OF FACTS**

1.    **CMB Is Not a Defendant**

On December 21, 2010, Tiffany filed an unverified complaint asserting claims for trademark infringement. Tiffany seeks injunctive relief against various individuals and entities (the Defendants), including an order prohibiting them from continued violation of Plaintiffs' trademarks, and recovery of profits and damages. Compl. at 24-29. The Complaint does not name CMB as a defendant, and does not allege any wrongdoing by, or seek any relief against, CMB, and does not even mention CMB or the other Banks.

2.      **CMB Acted in Good Faith in Responding to the Subpoena**

On the same day that Tiffany filed the Complaint, the Court issued a temporary restraining order, and on January 3, 2011, the Court signed the PI, which authorized expedited discovery from Defendants and third parties.  Weigel Dec. ¶¶ 3, 8.

On January 26, 2011, Tiffany served a copy of the PI and a Rule 45 Subpoena on CMBNY in New York.  Weigel Dec. Ex. 11.  The Subpoena included eight broad requests for information, all seeking information about any assets of Defendants.  The Subpoena sought no information about Defendants' alleged counterfeiting activities, but instead requested information about Defendants' past and present accounts and assets, including "[a]ll documents and internal or external communications concerning Defendants or Defendants' accounts"  and "[a]ll documents concerning any open or closed loans or mortgages relating to any of the Defendants . . . "  Weigel Dec. Ex. 11.

CMBNY promptly advised Tiffany that it "ha[d] no accounts or assets for the defendants listed in the PI and identified in your letter."  Healy Dec. Ex. A.   CMBNY then served a timely Response to Tiffany's Subpoena, in which CMBNY stated that it found no information about accounts of Defendants and had insufficient information to determine if it had any records about wire transfers involving Defendants. The Response also objected to production of any documents located in China on the grounds, among others, and to the extent that producing documents "would violate any applicable domestic or foreign law, including the banking, commercial and criminal law of the People's Republic of China."  Weigel Dec. Ex. 14.

3.      **CMB Was Not Central to the Defendants' Counterfeiting Operation**

Tiffany's statement that the Banks "have made themselves central to the sale of counterfeits on the internet" is not only false – it is absurd.  Pl. Obj. at 3.  Although Tiffany states

that the Banks have accepted "hundreds of thousands of U.S. Dollars in wire transfers from the U.S. on behalf of these counterfeiters alone" (id.), the only evidence Tiffany has ever provided of wire transfers going from the Defendants to CMB -- indeed the only evidence Tiffany has provided showing that there is any connection whatsoever between CMB and the Defendants -- is a PayPal, Inc. record showing a single wire transfer of $2,000 going from one of the Defendants' PayPal accounts to CMB (Weigel Dec. Ex. 4), an amount that is trivial in comparison to the over $150 million in damages claimed by Tiffany.  Compl. at p. 27, ¶ 3.[2]

### 4.    The Fact that CMB Has a Branch in New York is Irrelevant to this Dispute

As with its other allegations that CMB is somehow implicated in Defendants' alleged wrongdoing, the facts belie Tiffany's allegation that "it is precisely because of the Banks' presence in the U.S. that they are the organs of choice for illicit counterfeiting operations." Obj. at 3.  First of all, as noted, there is no basis for any suggestion that CMB is a bank of choice for any wrongdoer.  Second, there is no evidence that any of the Defendants had any account at CMBNY, or that CMBNY was in any way involved with any wire transfers sent or received on behalf of the Defendants or otherwise has anything to do with this dispute.

### 5.    Chinese Law Prohibits Disclosure of the Information Plaintiffs' Seek

There is no question that Chinese law prohibits the disclosure of records about accounts in China absent customer consent or authorization from an authorized government agency (which does not include a U.S. court).  Under the relevant provisions of the CBL and related

---

[2]    The related suggestion that CMB somehow knew but ignored that the Defendants were "counterfeiters" is similarly baseless.  CMB is not, as Tiffany seems to suggest, under an obligation to determine whether or not any of its customers were selling products outside of China that violated the trademark laws of another nation.  And CMB certainly does not "admit" that it is the bank of choice for the counterfeiters, another assertion made without record support, because it is not true.  Pl. Obj. at 16-7.  There is absolutely no evidence that Defendants "seek out" accounts with CMB because they know CMB will "fight to protect [the Defendants'] ill-gotten gains" (id. at 17) and CMBNY did not object to the Subpoena to "protect" the Defendants.  Id.  It did so for the entirely legitimate reason that producing documents from China will subject it to civil and criminal liability.  If anything, it is Tiffany that "seek[s] out" and harasses the Banks, forcing them to constantly re-litigate the same issues by repeatedly filing cases alleging essentially the same facts and making the same claims, and focusing its litigation efforts in these cases on the Banks.

regulations, CMB employees would be subject to monetary sanctions and CMB would face civil liability to its customer(s) if it were to provide information about assets located in China in response to the Subpoena or PI.  <u>See</u> Wu Dec. ¶¶21-26.  In addition, China has recently adopted Section 253(A) of its Criminal Law which makes employees of a Chinese bank as well as the bank itself subject to criminal sanctions – including imprisonment – for disclosure of individual customer account information.  <u>See</u> <u>id.</u> ¶¶ 27-8.  Both of Tiffany's two experts concede that Chinese law does prohibit disclosure of customer account information.  Clarke Dec. II ¶ 12; Alford Dec. ¶ 10, 12; CMB Mem. at 6.

<b><u>ARGUMENT</u></b>

**I.      <u>Standard of Review</u>**

Tiffany bears a "heavy burden" in arguing that Magistrate-Judge Pitman's findings on this discovery dispute should be set aside.  <u>Brennan</u> v. <u>County of Broome</u>, 2011 WL 2174503, at *1 (N.D.N.Y. 2011); <u>Highland Capital Management, L.P.</u> v. <u>Schneider</u>, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008).  As Tiffany concedes, a magistrate judge's order must be affirmed unless the magistrate judge's findings are "clearly erroneous" or "contrary to law."  Pl. Obj. at 6. Unless the district court finds that the magistrate judge abused his broad discretion in resolving the nondispositive dispute which was referred to him, the order should be affirmed.  <u>Brennan</u>, 2011 WL 2174503, at *1 (A magistrate judge's order may be reversed "only… where the district court determines that [he] 'abused his broad discretion…'"); <u>Roth</u> v. <u>United States</u>, No. 09 CV 8712 (GBD)(LMS), 2011 WL 2947004, 1 (S.D.N.Y. July 19, 2011) ("[A] magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion."); <u>AMBAC Financial Services, LLC</u> v. <u>Bay Area Toll Authority</u>, No. 09 Civ. 7062(RJH), 2010 WL 4892678, at *2 (S.D.N.Y. Nov. 30, 2010) ("[R]eversal is appropriate only if their discretion is abused").

If the magistrate judge considers numerous factors in a multifactor test, and provides a reasoned decision, such a decision is "clearly not an abuse of discretion."  Carter v. Artuz, No. 95 CIV. 2361 CSH KNF, 1999 WL 46685, at *4 (S.D.N.Y. Feb. 1, 1999); see also Valentin v. Bank of New York Mellon Corp., No. 09 CV 09448(GBD), 2011 WL 2437644, at *2 (S.D.N.Y. May 31, 2011).  A magistrate judge's findings should not be rejected "merely because the court would have decided the matter differently."  Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985); Graves v. Deutsche Bank Securities Inc., No. 07 Civ. 5471 (BSJ), 2010 WL 997178 (S.D.N.Y. March 18, 2010).  See also 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3069, at 350–51 (2d ed. 1997).  Where a magistrate judge has, as here, explicitly stated that he considered the objecting party's arguments but nonetheless found in favor of the non-objecting party, reversal is not justified.  Graves, 2010 WL 997178, at *7.[3]

## II.   Magistrate-Judge Pitman Correctly Evaluated the Restatement Factors[4]

Tiffany has not and cannot show that the Order is "premised on an erroneous legal principle."  Obj. at 7.  Tiffany itself asserts that courts in the Second Circuit have adopted the Restatement § 442(1)(c) test, the standard applied by the Order.  See Obj. at 9;  Pl. Mem. at 10. It is also beyond any legitimate dispute that Magistrate-Judge Pitman evaluated and balanced

---

[3]     In Plaintiffs' discussion of the governing standard in their Objection (at 6-7), they cite a number of bases for overturning a magistrate judge's decision, but make no argument that any are present here, as in fact they are not.

[4]     Tiffany will no doubt rely on the recent decision of Judge Sullivan in Gucci America, Inc., et al. v. Li, et al., 10 Civ. 4974 (S.D.N.Y. Aug. 23, 2011), which granted plaintiff Gucci's motion to compel production of documents located in China from BOC (i.e., CMB was not involved in that case).  As an initial matter, the fact that Judge Sullivan exercised his discretion in weighing the Restatement factors to come to a different conclusion than Magistrate-Judge Pitman does not demonstrate that Magistrate-Judge Pitman's decision incorrect, let alone clearly erroneous.  As Judge Sullivan noted in his decision, "the issue before the Court involved a highly fact specific inquiry and the application of a multi-pronged balancing test that was far from completely one-sided."  Id. at 13.  And the court further noted that BOC had a "legitimate" basis for its objection to discovery and its position was "substantially justified."  See id. (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988) ("substantially justified" means "genuine dispute" or that "reasonable people could differ as to the appropriateness of the contested action").  Moreover, the court appeared to have adopted as the standard for determining if the Hague Convention was an alternative means of obtaining discovery whether discovery was "easily obtainable" under the convention. That test has not been adopted by either the Supreme Court or the Second Circuit, and is not and should not be the controlling standard (see below at 11-12).  In addition, Judge Sullivan relied heavily on cases involving parties to litigation, where the rationale for employing the discovery procedures set forth in the Federal Rules may be more compelling.

each of the Restatement factors.  Pl. Obj. at 9; Pl. Mem at 10; CMB Mem. at 12.

    Magistrate-Judge Pitman did not "merely adopt[] one party's argument" (Obj. at 7), as Tiffany seems to imply, a fact that is clear from the face of the Order, which carefully recites and considers the arguments of both sides and sets forth a  "reasoned explanation" (id.) for the Magistrate-Judge's conclusions.  Indeed, Magistrate-Judge Pitman concluded that two of the Restatement factors weighed in favor of the Plaintiffs.  Id. at 9-10; Order at 48.  Although CMB disagrees with those conclusions, and believes that all factors weigh in favor of CMB, the fact that Magistrate-Judge Pitman found in favor of Tiffany on those two factors further undermines Tiffany's objection.  Tiffany's self-serving contention that Magistrate-Judge Pitman's conclusion on those two factors was the result of an "appropriate fact-specific inquiry" (Obj. at p.5 n.4) but that this is not the case for any of the other five factors cannot be taken seriously.

    Nor did Magistrate-Judge Pitman "disregard" relevant case law (id.).  In the Order, the Magistrate-Judge discussed the handful of cases cited by Tiffany and found that, contrary to Tiffany's claim, they did not support the relief Tiffany sought.  Order at 8, n.1 (discussing Dietrich v. Bauer, No. 95 Civ. 7051 (RWS), 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000)), 14-15 (discussing Ssangyong Corp. v. Vida Shoes Int'l, Inc., No. 03 Civ. 5014 (KMW) (DFE), 2004 WL 1125659 (S.D.N.Y. May 20, 2004)), 28-30 (discussing Milliken & Co. v. Bank of China, 758 F. Supp. 2d 238 (S.D.N.Y. 2010)), and 40 (discussing Gucci Am., Inc. v. Curveal Fashion, No. 09 Civ. 8458 (RJS) (THK), 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010)).  There is nothing in the Order's treatment of those cases that is erroneous at all, let alone an abuse of discretion.

### A.    Magistrate-Judge Pitman Was Correct in Finding that the Requested Information Originated in China

The first factor is not, as Tiffany seems to suggest, whether the documents at issue may be accessed by the customer/defendant from the United States, but whether they "originated" in

the United States.  It is undisputed that the documents Tiffany seeks – records related to accounts established and maintained at CMB branches in China – originated in China, not New York.  Cf. Pl. Mem. at 5; Pl. Mem. at 10 (noting that issue here is whether to "order discovery of documents and information located abroad").  Notably, nowhere in Tiffany's objections does Tiffany contend that the information "originated" in the U.S.  This factor weighs in favor of CMB.  See, e.g., Linde v. Arab Bank, PLC, 262 F.R.D. 136, 150 (E.D.N.Y. 2009) (refusing to compel production of documents that "originated in or are located in Israel, not the United States").

The fact that the customer may be able to access some account information electronically does not alter the place where the documents originated, and is irrelevant for several reasons. First, there is no evidence to suggest that even customers can access electronically from outside China the broad range of information about Defendants' past and present accounts and assets that Plaintiffs seek, including "all letters, emails, phone messages and notes of discussions with Defendants or any representative or purported representative of Defendants, and credit checks or investigations performed on Defendants or their principals," "[a]ll documents concerning any open or closed loans or mortgages relating to any of the Defendants . . . ," and "[a]ll documents relating to any cashier's, bank, or traveler's checks and money orders purchased by any of the Defendants . . . ."  Weigel Dec. Ex. 11.  The records Tiffany seeks are not limited to information about particular transactions that may be accessibly by customers.  Id. Ex. 25.

Second, regardless of what information the customer can access, there is no question that personnel at CMBNY do not have control over records located at the non-U.S. branches and head office of the bank, and cannot access the documents the Plaintiffs seek .  See Pagnotta Dec. ¶¶ 2-3.  As a result, there records sought are not in any sense located here.

Tiffany's suggestion that if the head office of CMB in China would only set up its

computer system to allow the New York branch to have access to all account records for accounts located at branches of the bank in China, then the documents could be considered to be located here and there would be no issue because the Hague Convention does not apply to evidence located here, is disingenuous at best. It is simply another way of saying that if CMB would only send the records sought to New York so that they could be produced to Tiffany there would be no issue to decide. But for CMB to do so without customer consent or direction from a Chinese authority would violate Chinese law.

**B.**   **Magistrate-Judge Pitman's Finding that the Hague Convention Provides an Alternative Means for Obtaining the Information Sought was Correct**

The finding that the Hague Convention provides an alternative means of obtaining records sought by Tiffany is fully supported by the record, regardless of where the burden lies.

In fact, it is not "well-settled" that CMB had the burden of demonstrating the "necessity and effectiveness of the Hague Convention procedures." Obj. at 11. The cases are far from uniform on the question of whether the proponent or opponent of the use of the Hague Convention bears the burden of demonstrating that use of the Convention is proper. See Hudson v. Hermann Pfauter GmbH & Co., 117 F.R.D. 33 (N.D.N.Y. 1987) (burden is on party seeking discovery); Knight v. Ford Motor Co., 615 A.2d 297, 300 (N.J. Super. Ct. 1992) (relying on post-Aerospatiale Special Commission on the Hague Convention and Hudson to place the burden on party opposing use of Convention procedures); *Report on the Operation of the Hague Service Convention and the Hague Evidence Convention*, 28 I.L.M. 1556 (April 1989) ("the burden of proof should be on the party wishing to resist application of the Convention"). Particularly in this case, where CMB is a nonparty being asked to violate the laws of its home jurisdiction, Tiffany should bear the burden of demonstrating that the Hague Convention is not an available alternative. See Orlich v. Helm Bros., 160 A.D.2d 135, 144, 560 N.Y.S.2d 10, 15 (1st Dep't

1990); Intercont'l Credit Corp. v. Roth, 595 N.Y.S.2d. 602, 603 (N.Y. Sup. Ct. 1991).

Even if the CMB does bear the burden, Magistrate-Judge Pitman did not err in finding that the Hague Convention is an alternative mechanism to obtain the records in China. The Order does not impose the burden on Tiffany, and regardless of the burden, CMB and the other Banks came forward with proof that China does give effect to Hague Convention requests, and that proceeding under the Hague Convention would provide an "alternative means" for Tiffany to obtain account records.

### i.    Magistrate-Judge Pitman Considered, and Correctly Rejected, Plaintiffs' Arguments

Tiffany's assertions that Magistrate-Judge Pitman (1) did not properly consider whether the Hague Convention would make it "less certain" that Tiffany would obtain the records it seeks, (2) did not consider whether the Hague Convention was "effective" or "efficient," and (3) did not determine whether information could be "easily obtained" under the Hague Convention, are all inaccurate. Obj. at 12. Magistrate-Judge Pitman considered all of the various standards that Tiffany set out as being appropriate to a Hague Convention analysis, including whether the Hague Convention would offer a "meaningful avenue to discovery," whether it was "unduly time consuming and expensive," whether it was "less certain to produce needed evidence," and whether documents could be "easily" obtained in China (Order at 25, 28), and Magistrate-Judge Pitman either rejected those standards as inappropriate or found that discovery via the Hague Convention in China met those standards.

Tiffany's claim that resort to the Hague Convention is only appropriate where it is "easy," and that information cannot "easily" be obtained in China through the Hague Convention, is incorrect. Obj. at 11. As an initial matter, neither the Supreme Court nor the Second Circuit has adopted the standard that information must be "easily" obtainable in order for

resort to the Hague Convention to be appropriate.  See Memorandum of Law of Nonparties BOC

and ICBC in Opposition to Plaintiffs' Objections to Magistrate Judge Pitman's July 25, 2011

Opinion and Order, dated September 9, 2011, at 13-15.  The only case suggesting that

information cannot "easily" be obtained through the Hague Convention in China was Milliken,

an inapposite case that does not control here.  Milliken involved a situation where BOC had

argued that it had a superior right to funds on deposit in a customer account but then refused to

disclose the documents relevant to that issue.  Order at 28-30.  The court's core holding was that

in that situation, it was not fair for BOC to refuse production:

> It is one thing to require the party bringing a claim to resort to Convention procedures in
> order to obtain evidence from another entity necessary to support that claim.  It is entirely
> a different matter to permit a party to decline to disclose, except pursuant to Convention
> protocols, information that it expects to use to support the claims or defenses that it has
> affirmatively asserted. . . .

758 F. Supp. 2d, at 245.  The court's statement that resort to the Hague Convention in that case

was not required and was not "easy," based on outdated language of a State Department circular

which has since been removed (see below), was at best an alternative holding.  Magistrate-Judge

Pitman correctly found that Milliken was not binding authority.  Order 29-30.[5]

Furthermore, courts have held that resort to the Hague Convention is appropriate even if

Hague Convention procedures might involve more time and expense than discovery under the

Federal Rules, because of the important comity purposes the Hague Convention serves.  See

Hudson, 117 F.R.D. at 35, 38-39 (fact Hague Convention procedures might "result in greater

expenditures of time and money . . . and could require an increased commitment of judicial

resources" "alone does not outweigh the important purposes served by the Hague Convention" –

i.e., the need to overcome "parochial biases" that the American rules are "superior to those

---

[5]    Where a plaintiff has not identified any controlling or well established case law to support its argument that
a particular standard applies, there is "no legal basis to find that the Magistrate Judge overlooked or misapplied the
law."  Valentin, 2011 WL 2437644, at *1.

[Hague Convention] procedures," and facilitating discovery "without slighting the judicial sovereignty of the nations in which discovery is sought"). Furthermore, the Court in Societé Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 546 (1987), on which Tiffany heavily relies throughout its brief, expressly recognized that American courts should take care to "demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations . . ." and expressly stated that it was "not articulate[ing] specific rules to guide this delicate task of adjudication." Here, where CMB is not a foreign litigant, but only a foreign nonparty, accused of no wrongdoing, the interests of comity are especially strong.[6] Thus, the Banks did not have to show that a Hague Convention request would be handled with no delay and granted as a matter of routine in order for the Court to order discovery via the Hague Convention. Obj. at 12.

Moreover, under Tiffany's proposed standard, the Hague Convention would never be used for information located in China, because there would be no way to know for certain how quickly China would execute a Hague Convention request, and, in Tiffany's view, it would always take longer than discovery by subpoena assuming no objection to discovery was made. The only way to avoid this *reductio ad absurdum* is to require Tiffany to resort to the Hague Convention and to monitor the results of that request, as Magistrate-Judge Pitman determined.

As for Plaintiffs' contention that Magistrate-Judge Pitman improperly required Plaintiffs to show that the Hague Convention would not be futile, Magistrate-Judge Pitman never stated that the inquiry under the Hague Convention was whether the request would be futile. Obj. at 12. Rather Tiffany *itself* argued that a Hague Convention request to China would be futile but

---

[6]     Aérospatiale involved efforts to obtain discovery from a foreign defendant – not a nonparty. Indeed, the Court in Aérospatiale made clear this distinction between litigants and nonparties when it concluded that it could not "announce a new rule of law that would require first resort to Convention procedures whenever discovery is sought from a foreign litigant." Id. at 542 (emphasis added). The Court's careful and specific reference to litigants indicates that the decision does not apply equally to nonparties.

failed to substantiate that assertion.  Order at 25 (citing Pl. Mem. at 15-19).  Magistrate-Judge

Pitman painstakingly considered that, as well as the other arguments made by Tiffany, and

determined that, on the basis of the law and the record, the Hague Convention provided an

appropriate alternative means for obtaining the information Tiffany seeks.

### ii. Magistrate-Judge Pitman Did Not "Ignore" Tiffany's Purported "Evidence" that a Hague Convention Request Would be Futile

The removal from the State Department website of language indicating that Hague

Convention requests sent to China have not been successful plainly suggests that that language

was incorrect, and Tiffany's contrary assertion defies reason.  Obj. at 12-13.  If the State

Department still believed that language to be accurate, it would not have removed it from its

website.  Moreover, the fact that the language which was removed from the State Department

website was outdated even before it was removed further supports that conclusion.[7]  Order at 26-

27.  Magistrate-Judge Pitman therefore correctly concluded that the deleted language should not

be given any weight.  Order at 27-8.

Tiffany's assertion that Magistrate-Judge Pitman concluded "without any basis" that the

"extensive case law and commentary" proffered by Tiffany is incorrect, is similarly wrong.   Obj.

at 13.  The "extensive case law" to which Tiffany cited consists of a single case- Milliken, 758 F.

Supp. 2d 238.  And both Milliken and the commentary cited by Tiffany based their opinion that

---

[7]     The language on the State Department website relied on by Tiffany exclusively cited to sources that were over fifteen years old – all dating back to before China ratified the Hague Convention in 1997.  See Weigel Dec. Ex. 29; Hague Conference on Private International Law, Status Table, http://www.hcch.net/index_en.php?act= conventions.status&cid=82.  The language previously quoted by Tiffany (Pl. Mem. at 17) was taken out of context and ignored other language which made clear that the circular had not been updated since shortly after China ratified the Hague Convention: "The Convention entered into force between the United States and the PRC in August 1998. The United States is seeking clarification from the Government of the People's Republic of China concerning how the Hague Evidence Convention will be applied in China."  Weigel Dec. Ex. 29.  The reality that the language formerly on the site was outdated even before it was removed was further confirmed by its omission of developments following China's execution of the Convention.  For example, since ratifying the Convention, China has been active in implementing it, and in 2003 designated China's highest local courts to directly forward and transfer judicial assistance requests in accordance with the Hague Convention.  See Chinese Judicial Practice in Private International Law: 2006, 8 Chinese J. Int'l L. 715, 717 (2009).

obtaining discovery via the Hague Convention in China is difficult <u>solely</u> on the language on the State Department website which has since been removed.  Of the "half a dozen" sources that Tiffany cites, not a single source cited any authority (i.e., an example of a Hague Convention request being denied by Chinese authorities) for its conclusion that obtaining discovery in China through the Hague Convention is difficult, other than the outdated State Department website.[8] Unsubstantiated statements from those sources are hardly a basis for concluding that the Hague Convention is not an available avenue for discovery in this case.

Furthermore, although he could have ignored Tiffany's sources, since they all rely solely on the obsolete version of the State Department website, Magistrate-Judge Pitman did not simply disregard those sources, but reviewed and discussed them.  Order 26-36.

Finally, contrary to Tiffany's contention, Magistrate-Judge Pitman provided ample "support" for his conclusions concerning China's reservations to Article 23 of the Hague Convention.  Order at 34-35.  Magistrate-Judge Pitman correctly found that the sources suggesting that, under the Article 23 reservation, China maintains great discretion in determining whether to honor a Hague Convention request, contain "no authority for [that] conclusion." Order at 34.  As Magistrate-Judge Pitman recognized, the same reservation has been adopted by thirty-six other Hague signatories, including European nations such as the United Kingdom and Switzerland.  <u>Id.</u>  In fact, China's Article 23 reservation is <u>less</u> broad than the reservations of other signatories such as the United Kingdom, as most countries have made a blanket Article 23 reservation to pretrial discovery.  <u>See</u> Hague Evidence Convention, Declarations Reservations, http://www.hcch.net/index_en.php?act= conventions.status&cid=82.  In contrast, the Chinese

---

[8]     In particular, it is not "inexplicable" that Magistrate Pitman did not find the China Law Blog to which Tiffany cites persuasive.  Pl. Obj. at 14 n. 11.  Magistrate Pitman found, correctly, that the China Law Blog "cites to the obsolete version of the State Department's website," and therefore found this source to be unpersuasive.  Order at 30.  Furthermore, Magistrate Pitman did not "disparage" this blog, as Tiffany contends.  <u>Id.</u>

reservation contains no blanket prohibition on discovery requests but merely limits the circumstances in which discovery requests will be effected.  Order at 34-5.

### iii.     China Gives Effect to Hague Convention Requests For Evidence

China's Ministry of Justice, which is responsible for handling Hague Convention and other similar request under bilateral treaties, provided a statement that indicates that China routinely processes Hague Convention requests.  Thus, the only up to date and valid evidence on the record of China's record of Hague Convention enforcement indicates that China is open to, and does routinely act on, Hague Convention requests.  Under these circumstances, Magistrate-Judge Pitman was entirely justified in finding that the Hague Convention provides an adequate, efficient, and effective method for obtaining discovery of information located in China.

### iv.     Tiffany Mischaracterizes China's Record on the Hague Convention

Tiffany's assertion that "*half* of the letters of request that China has receive [sic] through the Hague Convention have gone unanswered" is, much like Tiffany's other characterizations of the record, incorrect.  Obj. at 14.  The Ministry of Justice has indicated that it has "executed" 50% of the requests it has received- not that it has only "answered" half of these requests.  See Tr. at 50:18-52:11.  Thus, China does in fact review and respond to its Hague Convention requests, and there is no reason to believe that a proper request issued to China would not be executed, particularly where CMB has agreed "to take whatever reasonable steps that it can in China, including, if permitted, submitting an application to the Chinese Central Authority in support of any proper request that Plaintiffs submit pursuant to the Hague Convention" and BOC and ICBC have agreed to draft at their own cost, and in fact have already drafted, a Hague Convention request on behalf of Tiffany.  See CMB Mem. at 19; BOC and ICBC Mem. at 3.

Tiffany's contention that only 5% of Letters of Requests issued to "most countries" are returned unexecuted is misleading.  Obj. at 15.  When read carefully, the statistics in Summary of

Responses to the Questionnaire of May 2008 Relating to the Evidence Convention ("Hague Summary") reveals that other countries have similar, or lower, rates of execution.  For example, the Hague Summary indicates that of the 123 requests submitted to the United Kingdom in 2007, 87 were either returned unexecuted or still pending in December 2008 – over a year later.  See Hague Summary, Hater Dec. Ex. 4, Annex, Table 3.  Thus, less than 30% of the requests sent to the United Kingdom are executed within a year.  With a 50% execution rate, China's record of execution of Hague Convention requests appears to be better than that of the United Kingdom.

In addition, that China takes an average of six to twelve months to respond to a Hague Convention request is entirely in line with the average for other countries.  See Id. at 18, Fig. 5 (indicating that the majority of Hague Convention requests are executed between 6 and 12 months).  China's record is on par with the processing time in other countries around the world.[9]

**C.**    **Magistrate-Judge Pitman's Finding that China's Interest Outweighs the U.S. Interest in this Dispute Was Well Reasoned and Correct**

Magistrate-Judge Pitman did not "disregard" the U.S. interests implicated by the discovery dispute here, as Plaintiffs contend (Pl. Obj. at 16).  As he did with the other Restatement factors, Magistrate-Judge Pitman carefully considered this evidence bearing on this factor, including the law and facts proffered by Tiffany concerning the U.S. interest.  After analysis, Magistrate-Judge Pitman properly concluded that China's interest in enforcing its bank customer privacy laws outweighs the U.S. interest in allowing private parties to obtain evidence from nonparty banks in contravention of the laws of those banks' home country.

**i.**    **The U.S. Does Not Have an Interest in Forcing an Innocent Nonparty to Violate the Laws of its Home Jurisdiction**

The cases Tiffany cites for the claim that the U.S. interest in full and fair adjudication of

---

[9]    We also note that the Subpoena in this case was served on CMB on January 26, 2011- over seven months ago.  If Tiffany had originally requested the documents it seeks through the Hague Convention, Tiffany might well have already obtained them.

U.S. matters trumps China's interest in bank secrecy do not support that contention.  Curveal, 2010 WL 808639, dealt with enforcement of a U.S. judgment (not pre-judgment discovery) and does not state a general rule that the U.S. interest in enforcing judgments always outweighs the interest of a foreign country in enforcing its bank secrecy laws.  Obj. at 16; CMB Mem. at 22.  The court found only that the interest of Malaysia in the specific Malaysian law at issue in that case did not outweigh U.S. interests.  Milliken, the only case Tiffany cites which discusses the interests of the U.S. and China (Obj. at 16), is inapposite for reasons noted above.  Furthermore, Milliken heavily relied on the bank's failure to make timely objections, and in that case the customer had consented to disclosure.  See 2010 WL 5187744, at *2, 3, 11; Tr. at 62:15-63:25.

ii.    **Lanham Act Section 1116(d)(1)(A) Does Not Evidence Any U.S. Interest in this Action**

The language of Section 1116(d)(1)(A) of the Lanham Act (Obj. at 18) does not reflect any U.S. interest in the discovery sought by Tiffany here.  That Section  provides for the seizure of records "documenting the manufacture, sale, and receipt of things involved" with the counterfeiting operation (Pl. Mem. at 12) from a person who "used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services."  15 U.S.C. § 1116(d)(4)(B).  There is no suggestion that CMB has (or has any reason to have) such records, or that CMB has "used a counterfeit mark."  None of the requests in the Subpoena seek documents related to the counterfeiting operation; the Subpoena seeks documents about the Defendants' assets.  See id. at 4-5; Weigel Dec. Ex. 11.  Therefore, a court's ability to issue ex parte orders concerning "counterfeiters' business records" under this section (Obj. at 18) is irrelevant to the issue of whether Tiffany is entitled to CMB's records, should any exist, about any assets of the Defendants.  In these circumstances the section did not warrant discussion.  Obj. at 19.

Nor did Magistrate-Judge Pitman ignore evidence of the U.S. interest in combating

counterfeiting or "refuse[] to credit this interest."  Obj. at 18-20.  To the contrary, the Order

contains several pages of discussion of Tiffany's evidence on the U.S. interest in enforcing its

trademark laws (see Order at 36-41) and in fact did find that "the United States certainly has an

interest in enforcing its orders and protecting trademark rights."  Order at 41.[10]  Ultimately,

however, Magistrate-Judge Pitman found that "the Chinese interest in protecting its account

holders' confidentiality appears more significant in this case."  Id.

### iii.    The Chinese Interest in this Matter is Clear and Strong

In fact Magistrate-Judge Pitman acknowledged that China had yet to voice an objection

(id.) to the discovery sought in these proceedings, a fact that refutes Tiffany's argument that he

did not "address" this.  Obj. at 21.  But Magistrate Judge Pitman was not required to find that the

U.S. interest outweighed China's simply because China did not appear in this action.  There was

ample evidence of China's interests in preventing disclosure of confidential customer

information except based on customer consent or an order from a competent Chinese authority.

As Professor Wu has explained, China's bank secrecy laws and regulations are "intended to

foster the creation and sound operation of private banks in China by, among other things, (1)

assuring that banks operating in China are managed on a secure financial basis, and are able to

meet their obligations; and (2) establishing rules that govern the relationship between banks and

customers.  The existence of such protections is necessary to encourage the regular and

widespread use of banks . . . Chinese consumers would be hesitant to maintain bank accounts if

information could be disclosed in response to directives from foreign courts or government

agencies and without resort to any Chinese court or government agency."  Id. at 9, 11.  And as

Magistrate-Judge Pitman found, "China's multitude of criminal and civil regulations on the

---

[10]     Tiffany's statements about the alleged nickel content of the infringing goods and European Union
regulations about the use of nickel does nothing to establish a U.S. interest in preventing sale of such goods to U.S.
consumers.  Obj. at 19-20.

subject [ ] evidence its strong interest in bank confidentiality."  Order at 38.  Magistrate Pitman's decision is in line with Second Circuit precedent, which Tiffany ignores, finding that the United States' has an interest in and desire to respect the sovereignty of other nations.  See, e.g., Ings v. Ferguson, 282 F.2d 149, 151-2 (2d Cir. 1960).

No case cited by Tiffany demonstrates that the fact that confidentiality can be waived by the customer is a deciding factor in determining the magnitude of the foreign country's interest.  Curveal certainly does not turn on the existence of a right by the customer to waive.  In that case, the court cited a number of exceptions to the prohibition on bank disclosures in the Malaysian law, including a provision permitting disclosure "where the licensed institution has been served a garnishee order."  Curveal, 2010 WL 808639 at *4.  No comparable exception has been shown here.  See Wu Dec. ¶ 16.  In Minpeco, S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517, 526 (S.D.N.Y. 1987), the court declined to order discovery despite the existence of a customer right to waive secrecy.  In the Second Circuit case cited by Curveal and Tiffany, the court addressed common law privileges that were waived if not asserted affirmatively by the customer, not statutory prohibitions such as are involved here.  See U.S. v. First Nat'l City Bank, 396 F.2d 897 (2d Cir. 1968).  There is "no evidence that the account holders who would be affected by the execution of plaintiffs' requests here have, in fact, waived their rights."  Order at 36-7.[11]

Tiffany's efforts to diminish the importance of China's interest in bank secrecy by arguing that a number of Chinese "competent organs" have the right to inquire into bank accounts is unpersuasive.  All of those organs are *Chinese* government agencies.  Wu Dec. ¶ 16.

---

[11]      Tiffany's argument that CMB's customers have arguably waived any protections of Chinese law by failing to object to the U.S. Subpoena is similarly without merit.  Obj. at 21.  Only actual customer consent would allow CMB to disclose the documents Tiffany seeks here, should any exist.  See Wu Dec. ¶ 22.  A failure to object to the Subpoena would not constitute such consent.  Furthermore, the case cited by Tiffany on this point, Rexnord Holdings, Inc. v. Bidermann, No. 91 Civ. 5271 (RPP), 1994 WL 714394, at *3, n.1 (S.D.N.Y. Dec. 21, 1994), involves waiving the privileges afforded by U.S. law- not Chinese law- and provides no insight on whether a customer would be found to have waived its privileges under Chinese law by failing to object to a U.S. subpoena.

Chinese customers are familiar with and confident in Chinese courts and agencies, but would be hesitant to maintain bank accounts if account information could be disclosed in response to non-Chinese court or agency orders.  Id. at 11.

As for the ability of bank customers to access certain account information in New York, Tiffany never explains how this means, as Tiffany alleges, that bank personnel located in New York can access "the documents" in New York.  Obj. at 21-22.  It is undisputed that CMBNY personnel cannot access records located in China (see Pagnotta Dec. ¶¶ 2-3), and therefore, does not have access to the documents Tiffany seeks, should any exist.

     **D.**     **CMB Faces a Serious Risk of Hardship**

CMB and its employees would be violating Chinese law and would be subject to civil and criminal liability in China if forced to comply with the Subpoena.  Wu Dec. ¶¶ 21-8.  In these circumstances an order requiring disclosure should not be granted.  See, e.g., Trade Dev. Bank v. Cont'l Ins. Co., 469 F.2d 35, 41 (2d Cir. 1972); Ings, 282 F.2d at 151-2; Minpeco, 116 F.R.D. at 525-6; see also Linde, 262 F.R.D. at 151 ("an order compelling production [in violation of non-U.S. law] should be imposed on a nonparty . . . only in extreme circumstances").

A nonparty bank opposing discovery is not, as Tiffany seems to suggest (Obj. at 22), required to prove that it will *actually* be prosecuted for breaking the law; it must only show that disclosure is prohibited by the foreign law at issue.  See Minpeco, 116 F.R.D. at 526 (denying disclosure even though "neither side has provided helpful information regarding frequency of enforcement and punishments imposed under [Swiss law]"); Roth, 595 N.Y.S.2d at 603 (requiring resort to the Hague Convention where no evidence a bank had ever been prosecuted in Israel "for disclosing depositor information pursuant to an order of a foreign court"); see also U.S. v. First Nat'l Bank of Chi., 699 F.2d 341, 345 (7th Cir. 1983); In re Equitable Plan Co., 185 F. Supp 57, 60 (S.D.N.Y. 1960) (denying discovery of documents in Cuba where production

"might [not "will"] subject officers … to criminal penalties").

There is no basis for the statements of Tiffany's two experts U.S. experts that the Banks are "unlikely" to be prosecuted for disclosing information in violation of the unambiguous provisions of Chinese law implicated here.  Alford Dec. at ¶ 13; Clarke Dec. II ¶ 11.  Chinese authorities have prosecuted persons who have violated the criminal privacy law, resulting in imprisonment for those responsible for the violation.  Wu Dec. ¶ 28.  And Chinese banks, including BOC, have been held liable to their customers for violating customer secrecy.  Wu Dec. ¶¶ 23-5.  That these cases are not identical to the present one does not diminish the real risk faced by CMB and the other Banks for violating customer privacy.  Notably, Tiffany has not offered to indemnify CMB for any exposure it has in the event it is held liable in China for producing documents in violation of Chinese law, a virtual admission that Tiffany does not believe there is no risk of exposure for CMB.

Aside from the penalties CMB would face for violating Chinese law, complying with this type of subpoena is itself burdensome, as the Federal Reserve Bank of New York ("FRBNY") recently recognized in its amicus submission in a New York Supreme Court case, Samsun Logix Corp. v. Bank of China, et al., Index No. 105262/2010 (N.Y. Sup. Ct. 2010).[12]  Tiffany asserts that the FRBNY's primary concern in Samsun was that the dispute was not connected to New York (Pl. Mem. n. 19), but the FRBNY expressed concerns in general with forcing the New York branches of non-U.S. banks to comply with subpoenas seeking information located abroad:

> Even when records are electronic, many banks rely on different computer platforms . . . Banks are also required to navigate the legal requirements of each country's bank secrecy

---

[12]     The Samsun decision also establishes that no discovery concerning account information located in China is necessary or important here because Tiffany would not be able to enforce any judgment it obtains against assets located in China.  As the New York Supreme Court confirmed in Samsun, the separate entity rule bars a New York judgment creditor from recovering assets held in foreign bank branches by reason of the presence of a New York branch of the bank; and as a result, discovery concerning assets held at such foreign branches is not available even post judgment.  Samsun Logix Corp. v. Bank of China, et al., Index. No. 105262/10 (N.Y. Sup. Ct. May 12, 2011).

laws.  It's a huge undertaking, and [if required to respond to such subpoenas] banks will also become routine players in costly and complicated international lawsuits either in the United States, as here, when opposing a subpoena, or abroad when complying with a subpoena.

Transcript of Oral Argument at 75-6, <u>Samsun</u>, Index No. 105262/2010 (Feb. 4, 2011), Healy Decl. Ex. D.   The burden concerns raised by the FRBNY are equally present here.

Tiffany's reliance on <u>Milliken</u> and <u>Gucci Am., Inc, et al.</u> v. <u>MyReplicaHandbag.com et al.</u>, No. 07 Civ. 2438 (JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ("MyReplicaHandbag"), neither of which involve CMB, to argue that CMB does not face a risk of hardship here, is misplaced.  As noted above, <u>Milliken</u> involved a very different set of facts, as BOC in that case argued that it had a superior right to funds on deposit in a customer account but then refused to disclose the documents relevant to that issue.  In addition, in <u>Milliken</u>, the customer ultimately consented to the disclosure of the documents at issue.  <u>See</u> Tr. at 62:15-63:25.  And in <u>MyReplicaHandbag</u>, as reflected in a Stipulation and Order entered in that case, the defendant, who maintained an account with a BOC branch in China, had agreed that "the Bank of China account identified in the March 26 Order [i.e., the temporary restraining order calling for disclosure and asset freezing] shall be treated in accordance with the terms and the spirit of the March 26 order, including but not limited to the asset restraint and the disclosure requirement."  Saperstein Dec. Ex. O at 2-3.[13]  Professor Wu confirms that disclosure is not prohibited if the customer has consented. Wu Dec. n. 11. There is no consent here.

### E.   CMB Has Not Acted in Bad Faith

Tiffany's contention that CMB has exhibited a "continued refusal to comply with simple

---

[13]      In that case, BOC did express concerns as to whether this agreement was a sufficient consent to authorize complete disclosure and freezing by BOC, but in light of the existence of the Stipulation and Order, the bank's agreement, as part of a settlement, to allow Gucci to inspect account records in confidence, hardly demonstrates that BOC, let alone CMB, which was not involved in that case at all, is not subject to Chinese secrecy laws and would not be penalized for violating those laws here.  Furthermore, there was no determination by the Court in <u>MyReplicaHandbag</u> that such prohibitions do not exist or are not enforced in China, and the Court never issued a decision determining that BOC had to produce documents in violation of Chinese law.  <u>See</u> Saperstein Dec. pp. 6-7.

U.S. discovery in the face of repeated orders of this Court" is, like most of Tiffany's other contentions, incorrect.  Pl. Obj. at 3.  This Court's TRO and PI orders authorized expedited discovery.  Recognizing that the Federal Rules provide for documents to be obtained from third parties by way of a subpoena,[14] Tiffany served a subpoena on CMBNY, and CMBNY promptly responded to the subpoena in accordance with the terms of the subpoena and the procedure set forth in Rule 45 of the Federal Rules applicable to subpoenas by advising that it had found no documents in New York and objecting to production of documents from China.

The fact that Magistrate-Judge Pitman ultimately concluded that discovery should be obtained through the Hague Convention only confirms that CMB acted in good faith.

### III.   Magistrate-Judge Pitman Was Entitled to Order Resort to the Hague Convention, Regardless of Whether or Not the Court Has Jurisdiction over CMB

The cases Plaintiffs cite for the argument that CMB must produce documents despite a foreign law prohibition, simply because CMB maintains a branch in New York (see Pl. Obj. at 24), are inapposite or actually support denial of such an order in this case.  In First National City Bank of N.Y. v. IRS, 271 F.2d 616, 619 (2d Cir. 1959), the court held that if production would violate Panamanian law, it should not be compelled.  ("[T]the Bank argues that production of the branch's records located in Panama would require action by personnel in Panama in violation of the constitution and laws of Panama. If such were the fact we should agree that the production of the Panama records should not be ordered").  In In re Grand Jury Proceedings Bank of Nova Scotia, 740 F.2d 817, 828-9 (11th Cir. 1984), the records sought were those of American

---

[14]     Although Plaintiffs seem to take the position that no subpoena was necessary here (Pl. Obj. at 4-5), the only procedure recognized by the Federal Rules for obtaining discovery from a nonparty is Federal Rule of Civil Procedure 45.  CMB is not aware of, and Tiffany has never provided CMB with, any authority that would allow a district court to override the procedures and protections set forth in Rule 45, despite the fact that CMB has repeatedly invited Tiffany to provide such authority.  CMB has at all times complied with the Rule 45 procedure for obtaining discovery from nonparties, including by promptly providing Tiffany with objections to the Subpoena, and therefore there can be no argument that CMB has acted in bad faith here.  Under Rule 45, the burden is on the party seeking discovery – not the nonparty – to seek relief from the Court.  CMBNY's obligations under Rule 45 were met when CMBNY provided Tiffany with good faith objections and responses to the Subpoena.

citizens, and the Cayman Islands, the place from which the documents were sought, had previously established a policy against the use of its bank secrecy laws to shield criminal activities.  In Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 105 F.R.D. 435, 445 (S.D.N.Y. 1984), there was no contention that German law prohibited disclosure of the information sought; the claims were brought under the First Amendment, and the court found that those rights were of "paramount importance"; Germany made a blanket Article 23 reservation, stating that it would not execute any Letters of Request for pretrial discovery; and the case had already been delayed for nine years for reasons unrelated to the discovery issue.  Lee was decided before Aerospatiale, and though it recognized that a comity balancing analysis was necessary, it did not perform the seven factor analysis that both Tiffany and the Banks agree is relevant to this dispute.  In Gap, Inc. v. Stone Int'l Trading, Inc., No. 93 Civ. 0638 (SWK), 1994 WL 38651, at *1 (S.D.N.Y. Feb. 4, 1994), the court noted that "courts commonly look to the status of the person from whom discovery is sought as one factor in determining whether to apply the provisions of the treaty." The court performed no Restatement analysis and did not find how evidence would be collected.

## CONCLUSION

For the foregoing reasons, China Merchants Bank respectfully requests that the Court affirm Magistrate-Judge Pitman's Order.

Dated:  September 9, 2011                    WHITE & CASE LLP

By: /s/ Dwight A. Healy
    Dwight A. Healy
    Marika Maris (of counsel)
    1155 Avenue of the Americas
    New York, New York  10036
    Telephone:  (212) 819-8200
    Facsimile:   (212) 354-8113
    *Attorneys for China Merchants Bank*