```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

TIFFANY (NJ) LLC and                :
TIFFANY AND COMPANY,
                                    :   10 Civ. 9471 (RA)(HBP)
            Plaintiffs,
                                    :   OPINION
      -against-                         AND ORDER
                                    :
QI ANDREW, GU GONG, SLIVER DENG
and KENT DENG, all d/b/a            :
TIFFANYSTORES.ORG, FASHION STYLE
and STORESORG; ABC COMPANIES; and   :
JOHN DOES,
                                    :
            Defendants.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

By letter dated September 20, 2012, plaintiffs renew an application they made last year to enforce subpoenas that they served on the New York branches of three Chinese banks. For the reasons set forth below, plaintiffs' motion is denied.[1]

---

[1] Plaintiffs' September 20, 2012 letter also raises an issue concerning the alleged failure of the three Chinese banks to comply with a preliminary injunction issued by the Honorable William H. Pauley, III, United States District Judge, on January 3, 2011. Because this matter was referred to me only with respect to the discovery dispute concerning the Chinese banks, I do not address any issue concerning Judge Pauley's injunction.

II. <u>Facts</u>[2]

       This is a trademark counterfeiting case in which plaintiffs allege that defendants sold counterfeit Tiffany products through several websites hosted in the United States. Plaintiffs claim that defendants accepted payment in U.S. dollars, used PayPal, Inc. ("PayPal") to process customers' credit card transactions, then transferred the sales proceeds to accounts held by the Bank of China ("BOC"), Industrial and Commercial Bank of China ("ICBC") and China Merchants Bank ("CMB") (collectively the "Banks").

       After defendants defaulted, plaintiffs sought discovery last year from the Banks by serving subpoenas seeking the identities of the holders of the accounts into which the proceeds of defendants' sales were transferred and the subsequent disposition of those proceeds. The Banks all maintained branch offices in the Southern District of New York, and plaintiffs served their subpoenas on those branches seeking the information.

       The Banks responded to the subpoenas by advising that the documents plaintiffs sought were all maintained in China and

---

[2]The background facts relevant to the present application are set forth in greater detail in my prior Opinion and Order in this matter, <u>Tiffany (NJ) LLC v. Qi Andrew</u>, 276 F.R.D. 143 (S.D.N.Y. 2011), familiarity with which is assumed. I set forth the pertinent background facts here in summary form.

that the respective New York branches of the Banks lacked the ability to access the requested information.  The Banks further advised that China's internal laws prohibited the disclosure of the information except under certain conditions.  The Banks proposed that the plaintiffs pursue the requested discovery pursuant to the Hague Convention.

After receiving the parties' briefs and hearing oral argument, I issued an Opinion and Order dated July 25, 2011 in which I performed the comity analysis suggested in Section 442(1)(c) of the Restatement (Third) of Foreign Relations Law and concluded that plaintiffs should pursue discovery through the Hague Convention in the first instance.  Tiffany (NJ) LLC v. Qi Andrew, supra, 276 F.R.D. at 151-61.  However, my Opinion and Order concluded that, in the event the Hague Convention process proved futile, plaintiffs could renew their application to enforce the subpoenas served on the Banks' New York branches.  Judge Pauley subsequently affirmed my July 25, 2011 Order.  Tiffany (NJ) LLC v. Qi Andrew, 10 Civ. 9471 (WHP)(HBP) (Docket Item 50) (S.D.N.Y. November 14, 2011).

In November, 2011, plaintiffs submitted their Hague Convention application to China's Central Authority, and on or about August 7, 2011, the Ministry of Justice of the People's Republic of China ("MOJ") responded to the Hague Convention

3

request and produced some of the documents requested.  With respect to each of the Banks, the MOJ produced account opening documents (including the government identification card of the account holder), written confirmation of certain transfers into the accounts and a list of transfers out of the accounts.  With respect to CMB, the records indicate that all funds in the account were withdrawn through cash transactions at either an ATM or through a teller.  BOC and CMB each produced documents concerning a single account; ICBC produced documents for three accounts.

In its cover letter, the MOJ expressly noted that it was not producing all documents requested.  Specifically, it noted

> Concerning your request for taking of evidence for the Tiffany case, the Chinese competent authority holds that some evidence required lacks direct and close connections with the litigation.  As the Chinese government has declared at its accession to the Hague Evidence Convention that for the request issued for the purpose of the pre-trial discovery of documents only the request for obtaining discovery of the documents clearly enumerated in the Letters of Request and of direct and close connection with the subject matter of the litigation will be executed, the Chinese competent authority has partly executed the requests which it deems conform to the provisions of the Convention.

(Letter to the Undersigned from the International Legal Cooperation Center, Ministry of Justice, People's Republic of China, dated August 7, 2012).[3]

Plaintiffs claim that the MOJ's production is deficient and that I should now grant its application to enforce the subpoenas previously served on the New York branches of the Banks. Specifically, plaintiffs claims that the MOJ's response is deficient because (1) it does not state whether any of the defendants have any additional accounts at the Banks; (2) the MOJ did not produce detailed wire transfer records concerning the deposits into and withdrawals from the CMB and ICBC accounts, and (3) the MOJ did not produce documents concerning the Banks' efforts to comply with the preliminary injunction issued by Judge Pauley on January 3, 2011.

III.  Analysis

The principal issue to be resolved is whether the Banks' production through the MOJ has been so limited that resort

---

[3]As noted in my July 25, 2011 Opinion and Order, China, like 35 other signatories to the Hague Convention (including the United Kingdom and Switzerland) has reserved rights under Article 23 of the Hague Convention and stated that it will only execute pre-trial discovery requests for documents which are clearly enumerated in the request and which bear a direct and close connection to the subject matter of the litigation. See Tiffany (NJ) LLC v. Qi Andrew, supra, 276 F.R.D. at 155-56.

to the Hague Convention process can be characterized as futile. Although the Banks' document production has been more limited than it would have been under the Federal Rules of Civil Procedure, I cannot conclude that it is so limited that the process has been futile.

Initially, I note that the centerpiece of plaintiffs' futility argument last year was the argument that the People's Republic of China would either not respond at all to a request pursuant to the Hague Convention or would take an inordinate amount of time to do so. Experience has now proven both arguments to be unfounded. The Banks, through the MOJ, have unquestionably produced relevant, responsive documents. In addition, although the MOJ took approximately nine months to respond to the Hague Convention request, this period is not inordinately long given the delays inherent in international discovery proceedings. Although I am not aware of any statistical compilations, based on my experience as a Magistrate Judge, China's nine-month response time is, at most, only slightly longer than the response time I have seen in other cases involving Hague Convention requests; it is not so long that the process can be described as futile.

Second, the scope of the Banks' production has not been so narrow that resort to the Convention can fairly be described as futile. The account holders' identities and addresses have

been identified as well as transaction histories.  Plaintiffs' argument that additional documents concerning transfers into and out of the accounts will lead to a fuller understanding of the trademark counterfeiting operation is extremely speculative. With respect to the CMB account, the documents already produced show that all funds in the account were withdrawn in cash; thus, there are no meaningful transferee records with respect to that account.  With respect to the BOC and ICBC accounts, additional transfer documentation will identify the transferee and transferor institutions and the numbers of the accounts making or receiving the transfer.  Although none of the parties to the current dispute has submitted evidence on the issue, it is my understanding that the Banks' transfer documentation will not provide any information concerning the owner of the transferor or transferee account nor will it provide any information concerning the transaction giving rise to the transfer.  While I understand plaintiffs' desire to identify the source of the counterfeit merchandise, the bank transfer information they are seeking will be at, at most, a small step that may or may not lead to that goal.[4]

---

[4]In an effort to frustrate detection and tracing, many domestic transactions in illegal or contraband merchandise are conducted in cash.  The possibility that individuals in China who
(continued...)

Finally, the fact that the MOJ China takes a narrower view concerning the appropriate scope of pretrial discovery does not render the Hague Convention process futile.  The high cost of discovery in federal litigation is well known, see generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558-59 (2007); Bondi v. Capital & Fin. Asset Mgmt. S.A., 535 F.3d 87, 97 (2d Cir. 2008); In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002) (Cote, D.J.), and the fact that another sovereign chooses to take a more restrictive view of the appropriate scope of pretrial discovery is not unreasonable.  In addition, as noted above, China is not unique in reserving its right to limit production in response to a Hague Convention request to documents that it considers to bear a direct and close connection with the litigation; many other countries have made the same reservation.  As the Honorable Victor Marrero, United States District Judge, has noted in an analogous context:

> Absent extraordinary circumstances, it would not com-
> port with considerations of "practicality and wise
> administration of justice" for the courts of one nation
> as a matter of course to sit in judgment of the ade-
> quacy of due process and the quality of justice ren-
> dered in the courts of other sovereigns, and to decree
> injunctive relief at any time the forum courts conclude

---

    [4](...continued)
deal in counterfeit trademarked jewelry follow a similar practice is a further reason to believe that additional bank transaction documents will not provide fruitful information.

>      that the laws of the foreign jurisdiction under scru-
>      tiny do not measure up to whatever the scope of rights
>      and safeguards the domestic jurisprudence recognizes
>      and enforces to effectuate its own concept of justice.
>      On this larger scale, there can be no room for arro-
>      gance or presumption, or for extravagant rules or
>      practices that may encourage insularity or chauvinism
>      rather than respect for comity.  It cannot be the
>      proper province of any one judge in any one country,
>      giving expression to the push of a moment or the pull
>      of the immediate case, to promulgate judgments that
>      impose that court's rule and will across all sovereign
>      borders so as to reach the rest of humankind.

Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 428-29 (S.D.N.Y. 2002) (footnotes omitted).  Given the undeniably high cost of discovery under the Federal Rules of Civil Procedure and the fact that more than 30 countries have made the same reservation under the Hague Convention that China has made, I submit that concluding that the broad scope of Federal Rules discovery is the only fair manner in which to conduct discovery would be "the essence of sanctimonious chauvinism."  United States v. Giffen, 326 F. Supp. 2d 497, 507 (S.D.N.Y. 2004) (Pauley, D.J.) ("An argument in favor of the export of United States law repre-sents not only a form of legal imperialism but also embodies the essence of sanctimonious chauvinism." (citation and inner quota-tions omitted)).

     In summary, resort to the Hague Convention here has not proven futile.  Although China, pursuant to its reservation of rights under the Convention, has not produced all the documents

that would be required under the Federal Rules of Civil Procedure, its production is sufficient for plaintiffs to continue their investigation concerning the counterfeit goods at issue in this case. Plaintiffs' application to enforce their subpoenas of their subpoenas against the Banks' New York branches is, therefore, denied.

IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' application to compel the Banks to comply with the subpoenas previously served on them is denied.

Dated:  New York, New York
        November 7, 2012

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Robert Weigel, Esq.
Gibson, Dunn & Crutcher, LLP
47th Floor
200 Park Avenue
New York, New York 10166

Andrew R. Davies, Esq.
Allen & Overy, LLP
1221 Avenue of the Americas
New York, New York 10020

Dwight Healy, Esq.
White & Case, LLP
1155 Avenue of the Americas
New York, New York 10036

11