UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TIFFANY (NJ) LLC and TIFFANY AND COMPANY,

                   Plaintiffs,

      v.

QI ANDREW a/k/a QI JI a/k/a TIGER QI; GU GONG;
SLIVER DENG a/k/a DENG YUCHAN; KENT DENG
a/k/a OWEN KENT a/k/a DENG YONGXI a/k/a
DENG YONG XI; MA LI; and ONEPOUND d/b/a
ONEPOUND.NET and ONEPOUND.CN; all d/b/a
TIFFANYSTORES.ORG, TIFFANYSTORES.NET,
CANTONWHOLESALE.COM, WHOLSALE-
SELL.COM, FASHION STYLE and STORESORG;
ABC COMPANIES; and JOHN DOES,

                  Defendants.

                             2010 Civ. 9471 (KPF) (HBP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## FOR DEFAULT JUDGMENT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York  10166
(212) 351-4000

*Attorneys for Plaintiffs Tiffany (NJ) LLC
and Tiffany and Company*

New York, New York
November 18, 2013

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT ...........................................................................................................6

    I.      THIS COURT HAS JURSIDICTION OVER ALL DEFENDANTS ....................6

          A.      Defendants Are Subject to Personal Jurisdiction Under CPLR § 302(a)(1) .......................................................................6

          B.      Defendants Are Subject to Personal Jurisdiction Under CPLR § 302(a)(3) .......................................................................8

          C.      Due Process Is Satisfied.........................................................9

    II.     PLAINTIFFS ARE ENTITLED TO A DEFAULT JUDGMENT ......................11

          A.      All Defendants Were Properly Served But Failed to Answer ................11

          B.      Plaintiffs Have Established Their Claims Against All Defendants ..........11

                1.      Plaintiffs Have Established Their Trademark Counterfeiting Claim ...................................................12

                2.      Plaintiffs Have Established Their Contributory Trademark Infringement Claim...............................................13

                3.      Plaintiffs Have Established Their Cybersquatting Claim .............15

    III.    PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES AND INJUNCTIVE RELIEF.......................................................................17

          A.      Plaintiffs Are Entitled to Statutory Damages for Defendants' Willful Trademark Infringement................................................17

          B.      Plaintiffs Are Entitled to Statutory Damages for Defendants' Willful Cyberpiracy ...................................................22

          C.      Injunctive Relief Is Also Appropriate.........................................23

CONCLUSION.......................................................................................................26

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*,
975 F. Supp. 494 (S.D.N.Y. 1997)................................................................ 9, 10

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
889 F. Supp. 2d 606 (S.D.N.Y. 2012)................................................................ 23

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987)................................................................ 23

*Au Bon Pain Corp. v. Artect, Inc.*,
653 F.2d 61 (2d Cir. 1981)................................................................ 11

*Balenciaga Am., Inc. v. Dollinger*,
10 Civ. 2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) ........................................ 11

*Baron Phillipe de Rothschild, S.A. v. Paramount Distillers, Inc.*,
923 F. Supp. 433 (S.D.N.Y. 1996)................................................................ 7

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)................................................................ 7, 10

*Citigroup Global Mkts, Inc. v. JWS 1999 Holding B.V.*,
08 Civ. 5362 (RJS), 2009 WL 2981912 (S.D.N.Y. Sept. 11, 2009)................................... 11

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000)................................................................ 7, 9

*Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*,
06 Civ. 7827(HB) (GWG), 2008 WL 4449533 (S.D.N.Y. Oct. 2, 2008)........................ 19, 22

*F.T.C. v. 1263523 Ontario, Inc.*,
205 F. Supp. 2d 218 (S.D.N.Y. 2002)................................................................ 11, 24

*Fustok v. ContiCommunity Servs., Inc.*,
873 F.2d 38 (2d Cir. 1989)................................................................ 17

*Gaffigan v. Does 1-10*,
689 F. Supp. 2d 1332 (S.D. Fla. 2010) ................................................................ 16

*GAKM Res. LLC v. Jaylyn Sales Inc.*,
08 Civ. 6030 (GEL), 2009 WL 2150891 (S.D.N.Y. July 20, 2009)................................... 22

*GTFM, Inc. v. Solid Clothing Inc.*,
215 F. Supp. 2d 273 (S.D.N.Y. 2002)................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

*Gucci Am., Inc. v. Curveal Fashion,*
 09 Civ. 8458 (RJS), 2010 WL 308303 (S.D.N.Y. Jan. 20, 2010) .................................... 18, 24

*Gucci Am., Inc. v. Frontline Processing Corp.,*
 721 F. Supp. 2d 228 (S.D.N.Y. 2010) .......................................... 6, 8, 9, 11, 13, 14

*Gucci Am., Inc. v. MyReplicaHandbag.com,*
 07 Civ. 2438(JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ......................................... 18

*Gucci Am., Inc. v. Tyrrell-Miller,*
 678 F. Supp. 2d 117 (S.D.N.Y. 2008) ................................................................... 11

*Harrods Ltd. v. Sixty Internet Domain Names,*
 157 F. Supp. 2d 658 (E.D. Va. 2001), *aff'd,* 302 F.3d 214 (4th Cir. 2002) ........................... 16

*Hermès Int'l v. Doe,*
 12 Civ. 1623 (DLC) (S.D.N.Y. Apr. 30, 2012) ...................................................... 21

*Kernan v. Kurz-Hastings, Inc.,*
 175 F.3d 236 (2d Cir. 1999) ................................................................... 10

*Lingo Corp. v. Topix, Inc.,*
 01 Civ. 2863 (RMB), 2003 WL 223454 (S.D.N.Y. Jan. 31, 2003) ......................................... 16

*Louis Vuitton Malletier & Oakley v. Veit,*
 211 F. Supp. 2d 567 (E.D. Pa. 2002) .............................................................. 23

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.,*
 648 F. Supp. 2d 501 (S.D.N.Y. 2009) .............................................................. 19

*Louis Vuitton Malletier v. WhenU.Com, Inc.,*
 05 Civ. 1325 (LAK), 2007 WL 257717 (S.D.N.Y. Jan. 26, 2007) ........................................ 19

*Louis Vuitton Malletier, S.A. v. LY USA,*
 06 Civ. 13463 (AKH), 2008 WL 5637161 (S.D.N.Y. Oct. 3, 2008) ....................................... 22

*Make Up For Ever, S.A. v. SOHO Forever, LLC,*
 198 F.R.D. 56 (S.D.N.Y. 2000) ................................................................... 16

*Motorola Credit Corp. v. Uzan,*
 02 Civ. 666 (JSR), 2013 WL 4452014 (S.D.N.Y. Aug. 21, 2013) ......................................... 25

*N.Y.C. Triathlon, LLC v. N.Y.C. Triathlon Club, Inc.,*
 704 F. Supp. 2d 305 (S.D.N.Y. 2010) .............................................................. 15

## TABLE OF AUTHORITIES

Page(s)

*Nat'l Football League v. Miller*,
    54 U.S.P.Q.2d (BNA) 1574 (S.D.N.Y. 2000) .......................................................................... 9

*Nat'l Football League v. Sunmei*,
    13 Civ. 2572 (LGS) (S.D.N.Y. June 28, 2013) ................................................................... 21

*Nat'l Football League v. Zhu*,
    13 Civ. 05416 (HB) (S.D.N.Y. Sept. 19, 2013) ................................................................ 21

*Nike, Inc. v. Top Brand Co.*,
    00 Civ. 8179(KMW) (RLE), 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006), *adopted in*
    *full by* 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) ......................................................... 21

*NML Capital, Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013) ............................................................................................. 25

*Parker Waichman Alonso LLP v. The Orlando Firm, P.C.*,
    09 Civ. 7401 (CM), 2010 WL 1956871 (S.D.N.Y. May 14, 2010) ............................. 7, 8, 10

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997) ............................................................................................. 6

*Philip Morris v. Veles LTD*,
    06 Civ. 2988 (GBD), 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007) ..................................... 7

*Prime Publrs., Inc. v. American-Republican, Inc.*,
    160 F. Supp. 2d 266 (D. Conn. 2001) ............................................................................... 16

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002) ........................................................................................... 9, 14

*Schieffelein & Co. v. Jack Co. of Boca, Inc.*,
    725 F. Supp. 1314 (S.D.N.Y. 1989) ................................................................................. 16

*Silhouette Int'l Schmied AG v. Vachik Chakhbazian*,
    04 Civ. 3613 (RJH) (AJP), 2004 WL 2211660 (S.D.N.Y. Oct. 4, 2004) .......................... 22

*Smoothline Ltd. v. N. Am. Foreign Trading Corp.*,
    00 Civ. 2798 (DLC), 2003 WL 941442 (S.D.N.Y. Mar. 7, 2003) ..................................... 15

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006) ............................................................................................... 8

*Starbucks Corp. v. Morgan*,
    99 Civ. 1404 (LLS) (AJP), 2000 WL 949665 (S.D.N.Y. July 11, 2000) ........................... 12

# TABLE OF AUTHORITIES

Page(s)

*Thomas Publ'g Co. v. Indus. Quick Search, Inc.*,
  237 F. Supp. 2d 489 (S.D.N.Y. 2002) ............................................................. 8

*Tiffany (NJ) Inc. v. Luban*,
  282 F. Supp. 2d 123 (S.D.N.Y. 2003) ....................................................... 18, 22

*Tiffany (NJ) LLC v. Dong*,
  11 Civ. 2183 (GDB) (FM) (S.D.N.Y. Aug. 9, 2013) .................................. 19, 20, 24

*Tiffany (NJ) LLC v. Forbse*,
  11 Civ. 4976, 2012 WL 1918866 (S.D.N.Y. May 23, 2012) ............................... 20

*U2 Home Entm't, Inc. v. Fu Shun Wang*,
  482 F. Supp. 2d 314 (E.D.N.Y. 2007) .......................................................... 17

*Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*,
  665 F. Supp. 2d 434 (S.D.N.Y. 2009) .......................................................... 11

*United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*,
  128 F.3d 86 (2d Cir. 1997) ....................................................................... 23

*Webadviso v. Trump*,
  927 F. Supp. 2d 32 (E.D.N.Y. 2013) .......................................................... 16

*Wells v. Universal Pictures Co.*,
  166 F.2d 690 (2d Cir. 1948) ..................................................................... 16

## Statutes

15 U.S.C. § 1051 ..................................................................................... 3

15 U.S.C. § 1114 ................................................................................... 16

15 U.S.C. § 1114(1)(a) ............................................................................ 12

15 U.S.C. § 1116(a) ............................................................................... 23

15 U.S.C. § 1117 ................................................................................... 16

15 U.S.C. § 1117(a) ............................................................................... 17

15 U.S.C. § 1117(c) ............................................................................ 17, 21

15 U.S.C. § 1117(c)(2) ............................................................................ 20

15 U.S.C. § 1117(d) ........................................................................ 17, 22, 23

# TABLE OF AUTHORITIES

<u>Page(s)</u>

15 U.S.C. § 1118 .................................................................................................. 23

15 U.S.C. § 1125(a)(1)(B) ................................................................................... 12

15 U.S.C. § 1125(d) ........................................................................................ 15, 16

N.Y. Gen. Bus. Law § 360-m .............................................................................. 23

**Rules**

Fed. R. Civ. P. 12(a)(1)(A) ................................................................................. 4, 5

Fed. R. Civ. P. 54(c) ............................................................................................ 11

Fed. R. Civ. P. 55(b)(2)……….............................................................................1, 11

Fed. R. Civ. P. 65 ................................................................................................. 25

Local Rule 55.2(b)……………................................................................................1

N.Y.C.P.L.R. 302(a)(1)...................................................................................... 6, 7

N.Y.C.P.L.R. 302(a)(3)....................................................................................6, 8, 9

Plaintiffs Tiffany (NJ) LLC and Tiffany and Company (collectively, "Plaintiffs" or "Tiffany"), pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b), respectfully seek a default judgment against defendants Qi Andrew a/k/a Qi Ji a/k/a Tiger Qi, Gu Gong, Sliver Deng a/k/a Deng Yuchan, Kent Deng a/k/a Owen Kent a/k/a Deng Yongxi a/k/a Deng Yong Xi, Ma Li, and Onepound d/b/a Onepound.net and Onepound.cn, all doing business as TiffanyStores.org, TiffanyStores.net, CantonWholesale.com, Wholesale-Sell.com, Fashion Style and Storesorg (collectively, "Defendants").

## PRELIMINARY STATEMENT

Tiffany commenced this action in order to protect its valuable trademarks (the "Tiffany Marks") from willful and brazen infringement by Defendants, who sold counterfeit "Tiffany" products to consumers in this District and elsewhere in the U.S. through numerous websites, all of which were hosted in the U.S. and accepted payment in U.S. Dollars. Defendants applied counterfeit Tiffany trademarks to their shoddy products, provided consumers with ersatz "Tiffany blue" packaging, and misleadingly advertised their silver-plated imitations as "100% sterling silver." In a further effort to confuse consumers, Defendants sold counterfeit Tiffany products through domain names incorporating the trademark TIFFANY name.

Defendants were duly served with notice of this action as well as the temporary restraining order ("TRO") and preliminary injunction ("PI Order") entered by Judge Pauley on December 21, 2010, and January 3, 2011, respectively. Defendants failed to answer or otherwise respond to Tiffany's Complaint. Similarly, Defendants failed to answer or otherwise respond to Tiffany's Amended Complaint, which was filed on August 23, 2013, after third-party discovery revealed Defendants' true identities. Defendants also have not produced a single document in response to the expedited discovery provisions of the TRO. Further, although the Court enjoined

1

Defendants from infringing the Tiffany Marks, Defendants continued to sell counterfeit "Tiffany" goods over the Internet even after being served with the TRO and PI Order.

In light of Defendants' default, Tiffany now seeks entry of a default judgment against all Defendants. Tiffany requests statutory damages in the amount of $52,300,000 pursuant to 15 U.S.C. § 1117(c)-(d) for Defendants' willful infringement and counterfeiting of the Tiffany Marks, and for willful cyberpiracy based on the Defendants' use of infringing domain names. Tiffany also seeks injunctive relief, including a continuation of the restraint on Defendants' assets while any monetary judgment rendered by this Court remains unsatisfied.

Because Defendants willfully disregarded the Court's order to produce documents and records relating to their sales of counterfeit products and because Tiffany was able to obtain only limited discovery from third parties, a calculation of actual damages caused by Defendants' infringement is not possible. However, as set forth below, the statutory damages Tiffany requests are supported by the uncontroverted evidence and are consistent with the damages analyses used by other courts in this District in comparable actions. In the event that Defendants fail to respond to Tiffany's application for a default judgment, Plaintiffs respectfully request that judgment be entered forthwith without the need to expend further judicial resources through reference to a magistrate for a damages inquest.

## STATEMENT OF FACTS

The underlying facts giving rise to this action are set forth in greater detail in Tiffany's Memorandum of Law in Support of Plaintiffs' Order to Show Cause for a Temporary Restraining Order, dated December 20, 2010 ("TRO Brief") (ECF No. 11), the Declaration of Richard Perrone, executed December 20, 2010 ("Perrone Decl.") (ECF No. 13), and the

Declaration of Joseph Pepe, executed December 20, 2010 ("Pepe Decl.") (ECF No. 14).[1]

Briefly stated, Defendants came to Plaintiffs' attention in the course of Tiffany's ongoing anti-counterfeiting enforcement efforts.  TRO Br. at 3-4.  Defendants openly sold thousands of different products bearing counterfeit versions of Tiffany's federally registered trademarks (the "Counterfeit Products").  *See, e.g.*, Pepe Decl. Ex. 2.  To make a connection between their Counterfeit Products and genuine goods bearing the Tiffany Marks (the "Tiffany Products"), Defendants explicitly label their products as "Tiffany" in reckless disregard of Plaintiffs' trademark rights.  *Id*. ¶¶ 24, 33.  Of the various websites Defendants used to offer their Counterfeit Products for sale to the consuming public, three of Defendants' websites incorporated the trademark TIFFANY name into their domain names.  Am. Compl. ¶¶ 16-17 (ECF No. 76) (attached as Exhibit 7 to the Declaration of Jennifer C. Halter, dated November 18, 2013 ("Halter Decl.")).

On December 21, 2010, after learning of Defendants' counterfeiting scheme, Tiffany brought this action asserting claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New York law, and seeking *ex parte* injunctive relief.  *See* Compl. ¶¶ 50-86 (ECF No. 1) (Halter Decl. Ex. 1).  The same day, Judge Pauley issued the TRO (ECF No. 6), pursuant to which Defendants were restrained from, *inter alia*, infringing the valuable Tiffany Marks by selling Counterfeit Products.  TRO at 3-5.  Defendants were also prohibited from transferring any of their assets, ordered to produce discovery on an expedited basis, and directed to show cause why a preliminary injunction should not be issued.  *Id.* at 6-9.  The Court also granted Tiffany's request to effect service of process on Defendants by email.  *Id.* at 8.

---

[1] For the sake of brevity, Tiffany incorporates by reference the TRO Brief and focuses instead on the procedural history regarding Defendants since this action was commenced.

On December 23, 2010, Defendants were duly served with the Summons, Complaint, and TRO.  *See* Notice of Compliance with Service Provisions of TRO and Order to Show Cause, dated Dec. 31, 2010 (ECF No. 3) (Halter Decl. Ex. 2).  The deadline for Defendants to respond to the Complaint was January 13, 2011.  *See* Fed. R. Civ. P. 12(a)(1)(A) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint").  Defendants failed to answer or otherwise respond to the Complaint, failed to produce any discovery, and failed to appear at the preliminary injunction hearing.  *See* Clerk's Certificate of Default, dated Oct. 2, 2013 (ECF No. 78) (Halter Dec. Ex. 9).

Since Tiffany filed this action to enforce its trademark rights, the procedural history of this matter with regard to Defendants has been as follows:

- On December 21, 2010, Judge Pauley signed the TRO, which provided, *inter alia*, that all Defendants:  (1) must show cause by January 3, 2011 why a preliminary injunction should not issue; (2) were restrained from various acts of trademark infringement, counterfeiting and unfair competition, and from "transferring . . . any money . . . or other assets . . . into or out of any accounts associated with or utilized by any of the Defendants"; and (3) were required to answer Plaintiffs' document requests, which sought documents relating to Defendants' sales of counterfeit goods, on or before December 31, 2010.  TRO at 3, 6, 9.

- Service was effectuated as of December 23, 2010, in accordance with the provision of the TRO authorizing alternative service of process.  *See* Notice of Compliance with Service Provisions of TRO and Order to Show Cause (Halter Decl. Ex. 2).

- Defendants failed to produce any discovery to Tiffany, as required by the expedited discovery provisions contained in the TRO.  PI Order at 2 (ECF No. 7).

- Tiffany requested discovery from PayPal, Inc. ("PayPal"), which provided payment processing services to Defendants for sales transacted through www.TiffanyStores.org.  PayPal's records identified "Ma Li" as the account holder for the main payment processing account used by Defendants.  *See* Am. Compl. ¶ 57.

- After the TRO was issued, Tiffany had Defendants' website www.TiffanyStores.org shut down.  In defiance of the TRO, Defendants simply redirected consumers to www.TiffanyStores.net.  Based on information provided by PayPal, Tiffany located additional websites operated by Defendants, including www.CantonWholesale.com.  *Id.* ¶¶ 49-51.

4

- The PayPal documents also revealed that Defendants wired over $250,000 from the PayPal accounts associated with their counterfeiting operation into one or more accounts at three Chinese banks: Bank of China, China Merchants Bank, and Industrial and Commercial Bank of China (collectively, the "Banks"). *Id.* ¶¶ 58-59, 63, 66, 70.

- On January 3, 2011, Judge Pauley entered the PI Order, which contained terms nearly identical to those of the TRO. The PI Order also specifically referenced Ma Li as a John Doe Defendant, as well as two other websites identified since entry of the TRO, www.TiffanyStores.net, and www.CantonWholesale.com. PI Order at 2, 4.

- On January 6, 2011, Defendants were duly served with the PI Order. Certificate of Service (ECF No. 10) (Halter Decl. Ex. 5).

- In August 2012, Tiffany obtained limited discovery from the Banks via the Hague Convention, which confirmed Defendants' true identities. *See* Declaration of Robert L. Weigel, dated Nov. 26, 2012, Ex. 14 (ECF No. 60).[2]

- The account application produced by China Merchants Bank showed that Deng Yongxi provided "xuepo@onepound.cn" as his contact email address. Am. Compl. ¶ 73. Further investigation revealed that this was also the designated contact email address for Onepound.cn and Onepound.net, a company actively soliciting "replica" merchants as clients for website hosting and search engine optimization, including merchants offering Counterfeit Products. *See id.* ¶ 74 & Ex. 2.

- On August 22, 2013, Tiffany filed an Amended Complaint. Among other things, the Amended Complaint identified certain Defendants by their real names, and Tiffany also asserted a contributory trademark infringement claim against Defendants Deng Yuchan and Deng Yongxi as the moving and conscious force behind Defendant Onepound. *See, e.g., id.* ¶¶ 8-13, 118-129.

- On August 23, 2013, Tiffany served the Amended Complaint on Defendants via registered email pursuant to the Court's order dated July 23, 2013 (ECF No. 75). Certificate of Service (ECF No. 77) (Halter Decl. Ex. 8).

- The deadline for Defendants to respond to the Amended Complaint was September 13, 2013. *See* Fed. R. Civ. P. 12(a)(1)(A).

---

[2] As reflected on the Court's docket, resolution of this action has been delayed by a protracted discovery dispute between Tiffany and the Banks. *See, e.g.*, ECF Nos. 20-34. This discovery dispute, which began in early 2011 (*see* ECF No. 9), was conclusively resolved on May 21, 2013 when Judge Abrams entered an order denying Tiffany's request for further discovery from the Banks (*see* ECF No. 70). Tiffany had requested the additional discovery because, among other things, it was likely to yield the names of other individuals and entities involved in Defendants' counterfeiting operation. *See* ECF No. 59 at 24-25.

- Defendants failed to answer or otherwise respond to the Amended Complaint.  On October 2, 2013, the Clerk of the Court noted the default of all Defendants.  Certificate of Default, dated Oct. 2, 2013 (ECF No. 78) (Halter Decl. Ex. 9).

As reflected above, Defendants have failed to answer or otherwise respond to either the Complaint or the Amended Complaint, and they have never requested any extension of time to do so.  Indeed, Defendants have not even appeared in this action.

## ARGUMENT

## I.   THIS COURT HAS JURSIDICTION OVER ALL DEFENDANTS

Each Defendant is subject to personal jurisdiction in New York State and in this District.  *See* Am. Compl. ¶ 20.  "'Where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process.'"  *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 240 (S.D.N.Y. 2010) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)).  Because the Lanham Act does not provide for nationwide service of process, personal jurisdiction is determined by New York law.  *Id.*  Defendants' infringing activities fulfill the test for long-arm jurisdiction under Section 302(a)(1) and Section 302(a)(3) of the New York Civil Practice Law & Rules ("CPLR") because Defendants have offered and supplied Counterfeit Products to New York residents and have committed tortious acts of trademark infringement causing injury to Tiffany in New York.

### A.   Defendants Are Subject to Personal Jurisdiction Under CPLR § 302(a)(1)

Section 302(a)(1) of the CPLR confers jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state."  CPLR § 302(a)(1).  Jurisdiction is appropriate under Section 302(a)(1) when the defendant "purposefully avails itself of the privilege of conducting activities within New York,"

and the cause of action "arises from" those activities.  *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564, 566 (S.D.N.Y. 2000).

Courts have long held that the sale of infringing products to New York consumers, such as Defendants' sale of Counterfeit Products to Tiffany's investigator (*see* Pepe Decl. ¶¶ 16-33), "is sufficient to invoke jurisdiction . . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quotations omitted); *see also Baron Phillipe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996) (Section 302(a)(1) satisfied because defendants' "shipments [of infringing goods] were purposeful and substantially related to plaintiffs' claim of trademark infringement").

Defendants' operation of various fully interactive infringing websites provides an alternative ground for personal jurisdiction under Section 302(a)(1).  Courts have consistently concluded that personal jurisdiction may be properly exercised over defendants who sell counterfeit goods through fully interactive websites.  *See, e.g.*, *Chloe*, 616 F.3d at 171; *Philip Morris v. Veles LTD*, 06 Civ. 2988 (GBD), 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007); *Parker Waichman Alonso LLP v. The Orlando Firm, P.C.*, 09 Civ. 7401 (CM), 2010 WL 1956871, at *8 (S.D.N.Y. May 14, 2010).

Here, Defendants' operation and maintenance of websites selling Counterfeit Products "involves more than the passive posting of information about [defendants'] products and services."  *Citigroup*, 97 F. Supp. 2d at 565.  Defendants operate and maintain websites that (1) are highly interactive, (2) are accessible in New York, and (3) offer New York residents the opportunity to purchase Counterfeit Products.  Defendants further make Counterfeit Products available to New York consumers by offering to ship these illicit items to the U.S.  *See, e.g.*,

7

Pepe Decl. Exs. 2, 9.  As a result, jurisdiction is proper because Defendants have "transacted business" within New York by contracting to supply goods to New York residents.  *See Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 491-92 (S.D.N.Y. 2002) (if a defendant "does not want its website to subject it to personal jurisdiction here [in New York], it is free to set up a 'passive' website that does not enable . . . business in New York").

### B.    Defendants Are Subject to Personal Jurisdiction Under CPLR § 302(a)(3)

Defendants are also subject to personal jurisdiction under Section 302(a)(3) of the CPLR, which provides for personal jurisdiction where:  "(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; [and] (5) the defendant derives substantial revenue from interstate or international commerce."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006).

As alleged in the Amended Complaint, this action arises from a tortious, out-of-state act—Defendants' sale of Counterfeit Products.  Am. Compl. ¶ 20; *see also Frontline*, 721 F. Supp. 2d at 241 ("Trademark infringement is a tort for jurisdictional purposes, and the situs of this tort is considered to be where the website, or servers which maintain the website, are located.").  Moreover, Defendants have offered to sell and have sold Counterfeit Products to consumers in New York (Pepe Decl. ¶¶ 16-33), where Plaintiff Tiffany and Company has its principal place of business and where the world-famous Tiffany flagship store is located (Am. Compl. ¶ 20).  Infringement on the trademark rights of parties in New York repeatedly has been held to constitute an out-of-state tort that triggers CPLR § 302(a)(3).  *See Parker Waichman*

*Alonso LLP*, 2010 WL 1956871, at *9.[3]  Defendants have done nothing to dispute that their infringement caused confusion to Tiffany's customers in New York and damaged Tiffany's reputation, goodwill, and sales.  *See, e.g.*, Am. Compl. ¶¶ 83-85.  The threshold requirement of Section 302(a)(3) is therefore satisfied.

Section 302(a)(3) is also satisfied because Defendants should reasonably have expected their actions to have consequences in New York, and they derived substantial revenue from interstate and international commerce.  Defendants run their illicit enterprise from China and have shipped Counterfeit Products to New York residents.  *See, e.g.*, Pepe Decl. Exs. 8, 15.  As a result, Defendants should have reasonably expected their unlawful acts to have consequences in New York.[4]  Moreover, the limited discovery that Tiffany obtained in this action shows that Defendants transacted more than $250,000 in sales from websites selling Counterfeit Products using only the payment channels uncovered by Tiffany.  *See* Am. Compl. ¶¶ 58-59, 63, 66, 70. Further, Defendants' refusal to participate in discovery entitles Tiffany to an inference that Defendants' documents, if produced, would further support Tiffany's position.  *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir. 2002).

C.    **Due Process Is Satisfied**

This Court's exercise of personal jurisdiction over Defendants is consistent with the

---

[3]  *See also Citigroup Inc.*, 97 F. Supp. 2d at 568 (S.D.N.Y. 2000) ("Injury within the state includes harm to a business in the New York market in the form of lost sales or customers."); *accord Nat'l Football League v. Miller*, 54 U.S.P.Q.2d (BNA) 1574, 1576 (S.D.N.Y. 2000); *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997).

[4]  Similarly, Defendant Onepound should have reasonably foreseen that the "replica" Internet merchants it services would make sales to New York residents, as Internet commerce is not confined to the state in which the website is maintained.  *See Frontline*, 721 F. Supp. 2d at 243-44 (finding that third-party service providers for infringing websites should have expected their acts to have consequences in New York State).

requirements of due process; namely "minimum contacts" and "reasonableness." *Chloe*, 616 F.3d at 171.  In *Chloe*, the Second Circuit held this requirement was met where infringers purposefully direct their conduct at New York "by offering [counterfeit products] for sale to New York consumers on . . . website[s] and by selling [counterfeit products] to New York consumers." *Id.*

For the same reasons, due process is satisfied here.  Defendants have purposefully availed themselves of the privilege of conducting business in New York.  Defendants have engaged in multiple acts purposefully directed toward New York, each of which invokes jurisdiction, including:  (1) offering to ship Counterfeit Products to New York; and (2) actually shipping Counterfeit Products to New York.  *See* Pepe Decl. ¶¶ 16-33 & Exs. 8, 15.

Further, the test of reasonable foreseeability under New York law does not require that a defendant specifically target New York.  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241-42 (2d Cir. 1999) (upholding jurisdiction of New York court over defendant Japanese manufacturer based on an exclusive agreement to distribute defendant's products in the U.S.); *Am. Network*, 975 F. Supp. at 499-500 (defendant could foresee being haled into court in New York where defendant's website claimed to offer services across the U.S. and had signed up six subscribers in New York); *Parker Waichman Alonso LLP*, 2010 WL 1956871, at *11.  Here, similarly, Defendants knowingly sold Counterfeit Products to New York residents and Defendant Onepound could reasonably foresee that the infringing websites it serviced would make sales to New York residents given the nature of Internet commerce.  Accordingly, the exercise of personal jurisdiction over Defendants is consistent with the requirements of due process.  *See Balenciaga Am., Inc. v. Dollinger*, 10 Civ. 2912 (LTS), 2010 WL 3952850, at *5 (S.D.N.Y. Oct. 8, 2010); *Frontline Processing Corp.*, 721 F. Supp. 2d at 243.

10

## II.   PLAINTIFFS ARE ENTITLED TO A DEFAULT JUDGMENT

### A.   All Defendants Were Properly Served But Failed to Answer

Plaintiffs are entitled to a default judgment under Fed. R. Civ. P. 55(b)(2).  Despite

proper service and notice of this action, Defendants failed to appear and failed to answer or

otherwise respond to the Complaint or the Amended Complaint, as evidenced by the Clerk's

Certificate of Default.  Accordingly, entry of a default judgment against all Defendants is proper.

*See Citigroup Global Mkts, Inc. v. JWS 1999 Holding B.V.*, 08 Civ. 5362 (RJS), 2009 WL

2981912, at *1 (S.D.N.Y. Sept. 11, 2009).

Further, the specific relief requested by Tiffany's proposed default judgment is proper.

Rule 54(c) provides that a default judgment "must not differ in kind from . . . what is demanded

in the pleadings."  Fed. R. Civ. P. 54(c).  Here, the Amended Complaint specifically requests

both monetary damages and injunctive relief.  Am. Compl. at 35-40.  Defendants were therefore

on notice that this judgment could be entered against them and chose not to appear.

### B.   Plaintiffs Have Established Their Claims Against All Defendants

In assessing whether to enter a default judgment, the Court must accept as true all well-

pleaded allegations in the Amended Complaint, and Defendants' failure to respond to Tiffany's

allegations precludes them from raising any "meritorious defense" to the claims asserted against

them.  *See F.T.C. v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 218, 221 (S.D.N.Y. 2002).[5]

---

[5]  *See also Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC,* 665
F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as
regards liability it must 'accept [] as true all of the factual allegations of the complaint'")
(quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *accord Gucci
Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ("A plaintiff's factual
allegations, except those relating to damages, must be accepted as true where, as here, the
defendant defaults."); *Starbucks Corp. v. Morgan*, 99 Civ. 1404 (LLS) (AJP), 2000 WL

[Footnote continued on next page]

1.     **Plaintiffs Have Established Their Trademark Counterfeiting Claim**

Tiffany's pleadings establish the requisite elements of trademark counterfeiting; namely that the Tiffany Marks are entitled to protection and there is a likelihood of confusion between Defendants' Counterfeit Products and authentic Tiffany Products.  The Amended Complaint alleges, *inter alia*, that Defendants "willfully and intentionally used, reproduced and/or copied the Tiffany Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell their Counterfeit Products" (Am. Compl. ¶ 32) and that "Defendants make liberal use of the Tiffany Marks on their website[s] to make an explicit connection between their Counterfeit Products and the genuine Tiffany Products" (*id.* ¶ 41).

Even if Defendants had contested the allegations, however, Tiffany would still be entitled to the relief sought.  Under the Lanham Act, anyone who makes commercial use of a counterfeit mark "shall be liable" to the mark's owner.  15 U.S.C. § 1114(1)(a).  The Lanham Act separately creates liability for anyone who uses any mark or false designation of origin that, "in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities" of the products offered for sale.  15 U.S.C. § 1125(a)(1)(B).

Here, there can be no dispute that Tiffany's investigator accessed Defendants' infringing websites in New York, that Defendants admit the products offered for sale through their websites are "replicas" of genuine Tiffany Products, or that Defendants sold their Counterfeit Products to Tiffany's investigator.  *See generally* TRO Brief (ECF No. 11); Am. Compl. ¶¶ 11, 46, 51; Pepe

---

[Footnote continued from previous page]
949665, at *1 (S.D.N.Y. July 11, 2000) (factual allegations in complaint "taken as true" when defendant is in default).

Decl. ¶¶ 7-33.  Moreover, Tiffany has submitted evidence demonstrating that Defendants misleadingly described their Counterfeit Products as "sterling silver" when, in reality, the Counterfeit Products are composed primarily of copper and contain large amounts of nickel—a metal well-known in the jewelry industry for causing allergic reactions in consumers.  *See* Am. Compl. ¶¶ 44-45; Perrone Decl. ¶¶ 25-26.

> **2.   Plaintiffs Have Established Their Contributory Trademark Infringement Claim**

In addition to directly infringing the Tiffany Marks, Defendants Deng Yuchan and Deng Yongxi are also liable for contributory trademark infringement for providing essential services to other purveyors of Counterfeit Products through Defendant Onepound.  *See* Am. Compl. ¶¶ 72-80.  Contributory trademark liability may be established where a party (1) "intentionally induce[d] another to engage in trademark infringement" or (2) "supplied services with knowledge or by willfully shutting its eyes to the infringing conduct, while it had sufficient control over the instrumentality used to infringe."  *Frontline*, 721 F. Supp. 2d at 248, 249.

Here, the Amended Complaint establishes (citing to evidence obtained through third-party discovery) that Defendants Deng Yongxi and Deng Yuchan, as the moving and conscious force behind Defendant Onepound, "expressly seek out merchants of 'replica' products, a euphemism used by websites selling counterfeit goods."  Am. Compl. ¶ 77.  Screenshots obtained from two of Defendants' infringing websites—www.CantonWholesale.com and www.Wholesale-Sell.com—show that they are "powered by onepound."  *Id.* ¶ 79; *see also* Halter Decl. Exs. 4, 6.  The Amended Complaint also contains the unrebutted allegation that "Defendants Deng Yuchan and Deng Yongxi, through Onepound are knowingly providing essential hosting, development and search engine optimization services to a number of *other* replica websites selling Counterfeit Products."  *Id.* ¶ 80 (emphasis added).

Among the services Onepound offers are website hosting, website design, domain name registration and advice, integration of ecommerce features onto clients' websites, search engine optimization services, and setting up an "Adwords campaign" to draw traffic to clients' websites. *See id.* ¶ 75. There can be no dispute, moreover, that Onepound was soliciting Internet-based replica merchants as clients to provide them with the very services necessary to make selling Counterfeit Products over the Internet profitable and lucrative. *See id.* ¶ 124. The Onepound website specifically references "REPLICA websites, especially the big brands such as LV, ROLEX, TIFFANY and so on." *Id.* ¶ 78.

The allegations against Onepound are thus materially indistinguishable from the allegations held to establish contributory trademark liability in *Frontline*, where the court held that "the combination of [a] website and [a] credit card network" could give rise to contributory liability, since both are allegedly "necessary elements for . . . the sale and distribution of the counterfeit good." 721 F. Supp. 2d. at 252-53. Here, as in *Frontline*, Defendants Deng Yuchan and Deng Yongxi, through Onepound:

- provided services essential to the sale of the Counterfeit Products online. Indeed, the Onepound website explains that its services include "individual website design" not based on standard templates and "advise [*sic*] on suitable alternatives" if a customer wishes to register a domain name that is not available (*see* Am. Compl. ¶ 75);

- knew that the websites they serviced were selling Counterfeit Products based on even a cursory examination of the websites in question (*id.* ¶ 51); and

- intentionally induced the infringements at issue by specifically seeking out companies selling "replica" products (*compare id.* ¶ 78, *with Frontline*, 721 F. Supp. 2d at 248-49 (contributory infringement claim could be maintained where broker of credit processing services specifically advertised services to "replica products" merchants)).

Again, Defendants' failure to produce a single document in response to the Court-ordered discovery entitles Plaintiffs to a presumption that any such response, or documents, if produced, would support Plaintiffs' position. *See, e.g.*, *Residential Funding Corp.*, 306 F.3d at 113;

*Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, No. 00 Civ. 2798 (DLC), 2003 WL 941442, at

*6 (S.D.N.Y. Mar. 7, 2003).

### 3. Plaintiffs Have Established Their Cybersquatting Claim

To lure consumers to websites selling their Counterfeit Products, Defendants registered at

least three domain names containing the TIFFANY trademark:  www.TiffanyStores.org,

www.TiffanyStores.net, and www.wwwTiffanyJewelry.com.  Am. Compl. ¶¶ 16-17.  As a result,

Defendants are also liable for statutory damages under the Anticybersquatting Consumer

Protection Act ("ACPA"), which proscribes the registration of a domain name with the bad faith

intent to profit from selecting a domain name that is identical or confusingly similar to, or

dilutive of, that mark.  *See* 15 U.S.C. § 1125(d).

To prevail on a claim under ACPA, a plaintiff must show "(1) its marks were distinctive

at the time the domain name was registered; (2) the infringing domain names complained of are

identical to or confusingly similar to plaintiff's mark; and (3) that the defendant has a bad faith

intent to profit from the mark."  *See N.Y.C. Triathlon, LLC v. N.Y.C. Triathlon Club, Inc.*, 704

F. Supp. 2d 305, 324 (S.D.N.Y. 2010).

The allegations set forth in the Amended Complaint easily meet this test.  *First*, the

Tiffany Marks are distinctive and enormously popular.  *See, e.g.*, Am. Compl. ¶¶ 22-29.

*Second*, Defendants market their Counterfeit Products through websites whose domain

names are identical to the TIFFANY trademark.  *Id.* ¶ 48.  Defendants' use of the Tiffany Marks

in the domain names of certain infringing websites, combined with Defendants' unauthorized use

of the Tiffany Marks on the websites in question, is sufficient for a finding of confusing

similarity for purposes of ACPA.  *See Gaffigan v. Does 1-10*, 689 F. Supp. 2d 1332, 1340 (S.D.

Fla. 2010) (finding domain names including "shoptiffanynow.com" and "tiffany-jewery-us.com" confusingly similar to the trademarks owned by Tiffany).[6]

*Third*, there can be no question that Defendants registered the infringing domain names with bad faith intent.  Defendants blatantly sell products bearing counterfeit versions of the Tiffany Marks through websites containing "TIFFANY" in their domain name, all in an effort to confuse and divert consumers looking for genuine Tiffany Products.  Am. Compl. ¶ 48.

* * *

Based on the foregoing, the Court should find all Defendants liable for willful trademark counterfeiting and cybersquatting of the Tiffany Marks under 15 U.S.C. §§ 1114, 1117, and 1125(d), and, in addition, find Defendants Deng Yuchan, Deng Yongxi and Onepound liable for contributory trademark infringement.  Defendants are, and should be, held jointly and severally liable for their willful acts of infringement.  The law is well settled that "all persons and corporations who participate in, exercise control over, or benefit from a trademark infringement are jointly and severally liable."  *Lingo Corp. v. Topix, Inc.*, 01 Civ. 2863 (RMB), 2003 WL 223454, at *6 (S.D.N.Y. Jan. 31, 2003) (quoting *Schieffelein & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1318 n.2 (S.D.N.Y. 1989)); *see also Make Up For Ever, S.A. v. SOHO Forever, LLC*, 198 F.R.D. 56, 60 (S.D.N.Y. 2000) ("Courts have long held that in . . . trademark . . . infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor" (citing *Wells v. Universal Pictures Co.*, 166 F.2d 690, 692 (2d Cir. 1948))).

---

[6]  *See also Webadviso v. Trump*, 927 F. Supp. 2d 32, 41 (E.D.N.Y. 2013); *Prime Publrs., Inc. v. American-Republican, Inc.*, 160 F. Supp. 2d 266, 279-80 (D. Conn. 2001); *Harrods Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 677 (E.D. Va. 2001), *aff'd*, 302 F.3d 214 (4th Cir. 2002); *Freedom Calls Found. v. Bukstel*, 05 CV 5460 (SJ) (VVP), 2006 U.S. Dist. LEXIS 19685, at *40-41 (E.D.N.Y. Mar. 3, 2006).

III.    **PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES AND INJUNCTIVE RELIEF**

Under the Lanham Act, a trademark owner may choose to recover either statutory or actual damages.  *See* 15 U.S.C. § 1117(a), (c).  As a result of Defendants' default and the limited discovery Tiffany was able to obtain regarding Defendants' operations, a precise calculation of actual damages is not possible.  Accordingly, consistent with the prayer for relief in the Amended Complaint, Tiffany seeks an award of statutory damages in the amount of $52.3 million, representing $1 million per counterfeit mark per type of good under 15 U.S.C. § 1117(c), and $100,000 for each infringing domain name registered by Defendants under 15 U.S.C. § 1117(d).

Defendants should not benefit from their conscious choice to ignore these proceedings.  Defendants were certainly on notice that a judgment of this type might be awarded, as Tiffany's prayer for relief specifically included a request for damages and injunctive relief.  In fact, an award of $52.3 million is far less than the amount requested in the Amended Complaint, and is well supported by the allegations and the documentary evidence submitted to the Court.

Further, as long as there is a basis for the damages specified in the default judgment, the Court need not expend additional resources by holding a hearing on Tiffany's request for a default judgment.  *See Fustok v. ContiCommunity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Here, Tiffany has elected to recover statutory damages under the Lanham Act, which provides a basis for the damages specified without the need for a hearing.  *See U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 318 (E.D.N.Y. 2007).

A.    **Plaintiffs Are Entitled to Statutory Damages for Defendants' Willful Trademark Infringement**

The Lanham Act provides this Court with broad discretion to fashion an appropriate award for Defendants' repeated use of counterfeit marks.  *See* 15 U.S.C. § 1117(c).  In cases of

willful counterfeiting, the Lanham Act expressly authorizes statutory damages of up to

$2 million for each counterfeited mark per type of good offered by the infringers:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits . . ., an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
>> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>>
>> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

*Id.* Defendants' counterfeiting of the Tiffany Marks was unquestionably willful. This Court

may therefore impose damages of up to $2 million per counterfeit mark per type of good sold.

Defendants offered and sold Counterfeit Products specifically designed to imitate

authentic Tiffany Products. Defendants went so far as to replicate Tiffany's "care cards" for

sterling silver jewelry—even though Defendants knew that their Counterfeit Products were not

actually made of silver. *See* Am. Compl. ¶ 36; Pepe Decl. ¶¶ 24, 33. "The very nature of

Defendants' business, which involved the open sale of 'replica' [jewelry] and other items,

demonstrates that the infringement was willful." *Gucci Am., Inc. v. Curveal Fashion*, 09 Civ.

8458 (RJS), 2010 WL 308303, at *5 (S.D.N.Y. Jan. 20, 2010).

Moreover, courts have concluded that "[w]hen a defendant has defaulted, then by virtue

of its default it is deemed to be a willful infringer." *Gucci Am., Inc. v. MyReplicaHandbag.com*,

07 Civ. 2438(JGK), 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008) (citing *Tiffany (NJ) Inc. v.*

*Luban*, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003)); *accord Louis Vuitton Malletier v.*

*WhenU.Com, Inc.*, 05 Civ. 1325 (LAK), 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007).[7]

Tiffany's request for statutory damages in the amount of $52.3 million is consistent with the methodology recently used by Magistrate Judge Maas in a similar case in this District. Halter Decl. Ex. 10 (Report and Recommendation, *Tiffany (NJ) LLC v. Dong*, 11 Civ. 2183 (GDB) (FM) (S.D.N.Y. Aug. 9, 2013)). In *Dong*, as in this case, Tiffany sought a default judgment against defendants selling counterfeit products over the Internet and a service provider that knowingly aided the defendants' infringement. *Id.* at 1-2. Like Defendants here, the *Dong* defendants "actively operated numerous websites" through which they offered for sale thousands of Counterfeit Products. *Id.* at 14. While "[t]hese facts alone suggest . . . a large-scale counterfeiting enterprise," Judge Maas also observed that because the defendants "market their wares online, they also obviously have the ability to reach a virtually limitless number of potential customers worldwide." *Id.* On these facts, Judge Maas concluded that "Tiffany is entitled to a substantial damages award, both to compensate Tiffany for the damage to the Tiffany Marks and to further the goals of specific and general deterrence." *Id.*

Judge Maas recommended that "Tiffany be awarded statutory damages in the amount of $1 million per type of goods sold," and that the service providers be held jointly and severally

---

[7] *See also Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("[B]y virtue of its default, [defendant] has admitted . . . that it acted knowingly and intentionally or with reckless disregard or willful blindness"); *Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, 06 Civ. 7827(HB) (GWG), 2008 WL 4449533, at *5 (S.D.N.Y. Oct. 2, 2008) ("The defendant's willfulness in violating the trademark law is established by virtue of its failure to controvert the circumstantial evidence of willfulness alleged in the complaint").

liable for the damages award.  *Id.* at 15.  The same reasoning is equally applicable here.[8]

If anything, Judge Maas's recommendation *understates* the quantum of damages applicable to this case.  In *Dong*, Judge Maas found that it was not clear that the defendants had applied every Tiffany Mark to all nine types of goods sold.  *See id.* at 14.  That is not the case here, where Tiffany has submitted evidence demonstrating Defendants' unlawful use of five different Tiffany Marks in connection with the sale of men's and women's watches, and six different Tiffany Marks in connection with each of seven other types of goods (bracelets, necklaces, earrings, rings, key rings, money clips and cuff links).  *See* Halter Decl. ¶¶ 21-35.

As set forth below, awarding Tiffany $1 million per mark infringed in connection with Defendants' sale of nine different types of goods would result in a statutory damages award of $52 million based on the formula provided in 15 U.S.C. § 1117(c)(2):

| TYPE OF GOOD | NUMBER OF TIFFANY MARKS INFRINGED | STATUTORY DAMAGES: $1 MILLION PER MARK PER TYPE OF GOOD |
|---|---|---|
| Bracelets | 6 | $6 million |
| Necklaces | 6 | $6 million |
| Earrings | 6 | $6 million |

---

[8]  Judge Daniels has yet to rule on the damages portion of Magistrate Judge Maas's Report and Recommendation in *Dong*.  For the time being, Judge Daniels has entered an order continuing the asset freeze and holding default in abeyance "until the Second Circuit Court of Appeals issues a decision in *Tiffany (NJ) LLC v. Forbse*, No. 12-2330 (2d Cir. Apr. 16, 2013)."  Halter Decl. Ex. 11 (Order, *Tiffany (NJ) LLC v. Dong*, 11 Civ. 2183 (GBD) (FM) (S.D.N.Y. Oct. 23, 2013)).  The *Forbse* appeal, scheduled for oral argument on December 6, 2013, concerns the Banks' challenge to a pre-judgment asset restraint similar to the one entered by Judge Pauley in this action and by Judge Daniels in the *Dong* action.  *See Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976, 2012 WL 1918866, at *11-13 (S.D.N.Y. May 23, 2012).  Here, the Proposed Default Judgment and Permanent Injunction includes a continuation of the restraint on Defendants' assets, but does not include a turnover provision directing any banks to turn over Defendants' assets to Tiffany.

| TYPE OF GOOD | NUMBER OF TIFFANY MARKS INFRINGED | STATUTORY DAMAGES: $1 MILLION PER MARK PER TYPE OF GOOD |
|---|---|---|
| Rings | 6 | $6 million |
| Men's Watches | 5 | $5 million |
| Women's Watches | 5 | $5 million |
| Key Rings | 6 | $6 million |
| Money Clips | 6 | $6 million |
| Cuff Links | 6 | $6 million |
| **Total Statutory Damages for Trademark Counterfeiting:** | | **$52 million** |

The calculations set forth above and the proposed damages award of $52 million are consistent with statutory damages issued in similar cases where, as here, there was reason to believe defendants' sales were substantial.  *See, e.g.*, *Nat'l Football League v. Zhu*, 13 Civ. 05416 (HB) (S.D.N.Y. Sept. 19, 2013) (awarding $2 million per counterfeit mark for a total award of $136 million); *Nat'l Football League v. Sunmei*, 13 Civ. 2572 (LGS) (S.D.N.Y. June 28, 2013) (awarding $2 million per counterfeit mark); *Nike, Inc. v. Top Brand Co.*, 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472, at *3 (S.D.N.Y. Feb. 27, 2006), *adopted in full by* 2006 WL 2884437, at *2 (S.D.N.Y. Oct. 6, 2006) (awarding $1 million per counterfeit mark); *see also* *Hermès Int'l v. Doe*, 12 Civ. 1623 (DLC) (S.D.N.Y. Apr. 30, 2012) (awarding total statutory damages of $100 million pursuant to 15 U.S.C. § 1117(c)).  Tiffany's requested damages are also justified by Defendants' "ability to reach a virtually limitless number of potential customers worldwide."   Halter Decl. Ex. 10 (*Dong* Report and Recommendation) at 14.

Moreover, the reason that Tiffany is unable to calculate actual damages is because Defendants made the tactical decision to ignore the Court's explicit order requiring the

production of documents.  Tiffany is therefore entitled to a presumption that the requested documents, if produced, would have been harmful to Defendants' case.  *See Ermenegildo Zenga Corp.*, 2008 WL 4449533, at \*5 (drawing all reasonable inferences against defendant when awarding statutory damages where "defendant's failure to respond to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to the defendant's circumstances"); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08 Civ. 6030 (GEL), 2009 WL 2150891, at \*6 (S.D.N.Y. July 20, 2009) ("Any imprecision in calculating Defendants' profits is the fault of Defendants, who failed to participate in this litigation"); *Silhouette Int'l Schmied AG v. Vachik Chakhbazian*, 04 Civ. 3613 (RJH) (AJP), 2004 WL 2211660, at \*2 (S.D.N.Y. Oct. 4, 2004) ("Among the appropriate factors particularly relevant here are the deterrent effect on defendants and others, and the defendants' failure to produce records from which more traditional damages could be computed.").[9]

**B.   Plaintiffs Are Entitled to Statutory Damages for Defendants' Willful Cyberpiracy**

Plaintiffs are also entitled to recover damages for Defendants' use of three domain names that infringed the TIFFANY trademark:  www.TiffanyStores.org, www.TiffanyStores.net, and www.wwwTiffanyJewelry.com.  In cases involving willful cybersquatting, the Lanham Act separately provides for statutory damages of up to $100,000 for each domain name that is identical or confusingly similar to one or more of the plaintiff's marks.  15 U.S.C. § 1117(d).

---

[9]  Tiffany is also entitled to an award of reasonable attorneys' fees and costs incurred in bringing this trademark counterfeiting action under 15 U.S.C. § 1117(b).  *See Luban*, 282 F. Supp. 2d at 125; *Louis Vuitton Malletier, S.A. v. LY USA*, 06 Civ. 13463 (AKH), 2008 WL 5637161, at \*3 (S.D.N.Y. Oct. 3, 2008).  Rather than request attorneys' fees and costs, however, Tiffany respectfully requests that the Court take into account the need to compensate Tiffany for its attorneys' fees in setting the appropriate amount of statutory damages.

Here, Defendants' bad faith intent to profit by registering domain names using the TIFFANY trademark justifies maximum statutory damages of $100,000 for each infringing domain name, for a total award of $300,000.

**C.      Injunctive Relief Is Also Appropriate**

Tiffany also requests that the key terms of the TRO and PI Order be entered in a permanent injunction enjoining Defendants' infringing conduct and restraining Defendants' assets while any judgment rendered by this Court remains unsatisfied.

Many courts have granted injunctive relief in trademark cases where the defendants have defaulted.  *See, e.g.*, *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 88 (2d Cir. 1997) (affirming default judgment in action to enjoin the use of plaintiff's registered service mark); *Louis Vuitton Malletier & Oakley v. Veit*, 211 F. Supp. 2d 567, 589 (E.D. Pa. 2002) (permanently enjoining defendants from further infringing plaintiffs' trademarks as part of default judgment).  "The standard for a permanent injunction is essentially the same as for a preliminary injunction, the difference being that the plaintiff must show actual success rather than a likelihood of success."  *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 889 F. Supp. 2d 606, 611 (S.D.N.Y. 2012) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987)).  For the reasons previously set forth, Tiffany meets the requirements for permanent injunctive relief.

The Lanham Act and the New York General Business Law both specifically authorize injunctive relief in cases such as this, where the defendant has infringed or diluted another's trademark rights.  *See* 15 U.S.C. §§ 1116(a), 1118; N.Y. Gen. Bus. Law § 360-m; *see also GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 307 (S.D.N.Y. 2002) (approving an injunction "prohibiting [defendant] from making any unauthorized use of [plaintiff's] trademarks and trade dress and directing that [defendant] deliver for destruction all infringing

merchandise").  Injunctive relief is particularly appropriate where, as here, "there is a cognizable

danger that, in the absence of an injunction, the defendants will continue to" engage "in

fraudulent, deceptive trade practices."  *1263523 Ontario, Inc.*, 205 F. Supp. 2d at 222-23

(granting default judgment ordering a permanent injunction and monetary damages).

Defendants cannot deny—and have not denied—that their unauthorized use of the

Tiffany Marks is "likely to cause confusion and mistake and to deceive potential customers and

the general purchasing public as to the source, origin, or sponsorship of their Counterfeit

Products."  Am. Compl. ¶ 83.  Defendants have already demonstrated their willingness to

continue violating the Lanham Act by deliberately ignoring the TRO.  *See* PI Order at 2.

Therefore, Tiffany is entitled to a permanent injunction, prohibiting Defendants' manufacture,

distribution, delivery, shipment, import, export, advertisement, promotion, offering for sale, or

sale of products bearing the Tiffany Marks, any derivation or colorable imitation thereof, or any

mark confusingly similar or likely to dilute or detract from the Tiffany Marks.

Tiffany also respectfully requests that the Court continue the asset restraint previously

imposed on Defendants—relief that Tiffany expressly requested in its prayer for relief.  *See* Am.

Compl.  at 40 (requesting that "Defendants' assets . . . be restrained and frozen . . . so that

Tiffany's right to the damages set forth in the Complaint is not later rendered meaningless").

The asset restraint is necessary to preserve Tiffany's ability to enforce any judgment of this

Court against Defendants—counterfeiters who have brazenly violated Tiffany's intellectual

property rights and ignored the orders of this Court.  *Cf.* Halter Decl. Ex. 11 (*Dong* Order) at 1

("This Court's prior freeze order shall remain in effect"); *Curveal Fashion*, 2010 WL 308303 at

*6 (restraining defendants' assets while damages award remains unsatisfied).

There is no basis, moreover, to set aside the asset restraint now.  The Lanham Act

24

provides the Court with express authority to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark."  15 U.S.C. § 1116(a).  Further, this Court has the equitable power to restrain Defendants' assets under Fed. R. Civ. P. 65.  *See NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243-44 (2d Cir. 2013) (affirming injunction where the district court had found that Argentina "has done everything possible to prevent those judgments that have been entered [against it] from being enforced"); *Motorola Credit Corp. v. Uzan*, 02 Civ. 666 (JSR), 2013 WL 4452014, at *1 (S.D.N.Y. Aug. 21, 2013) ("Given [defendants'] history of secreting assets away from [plaintiff]'s efforts to collect on its judgment, it is doubtless the case that, should the freeze be released, no assets would remain . . . to restrain or execute upon.").

Given the likelihood that Tiffany will be irreparably harmed in the absence of the injunctive relief requested above, entry of a permanent injunction is appropriate.

## CONCLUSION

For the foregoing reasons, Tiffany respectfully requests an order:  (a) entering a default judgment against all Defendants; (b) awarding injunctive relief as requested in the Amended Complaint; (c) holding all Defendants jointly and severally liable for statutory damages of $52.3 million; and (d) for such other relief as this Court may deem just and proper.

Dated: New York, New York
      November 18, 2013

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:        s/ Robert L. Weigel
      Robert Weigel (RW 0163)
      Howard S. Hogan (HH 7995)
      Jennifer C. Halter (JH 7032)
      Anne M. Coyle (AC 3158)

      200 Park Avenue, 47th Floor
      New York, New York  10166
      (212) 351-4000

*Attorneys for Plaintiffs Tiffany (NJ) LLC and Tiffany and Company*